**AMERICAN CASUALTY COMPANY, Plaintiff–Appellant,**

v.

**UNITED SOUTHERN BANK, United Southern Corporation, and Omnibank of Mantee, Defendants–Appellees.**

No. 90–7028.

United States Court of Appeals, Fifth Circuit.

Jan. 9, 1992.

Rehearing Denied Feb. 11, 1992.

William B. Monk, Emmett C. Sole, Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, La. and David R. Hunt, Ross, Hunt, Spell & Ross, Clarksdale, Miss., for plaintiff-appellant.

John H. Dunbar and Jack F. Dunbar, Holcomb, Dunbar, Connell, Chaffin & Willard, Oxford, Miss., for United Bank and United Corp.

Grady F. Tollison, Tollison & Alexander, Oxyford, Miss., for Omnibank of Mantee.

Before CLARK, Chief Judge, JONES, Circuit Judge, and PARKER, District Judge.*

CLARK, Chief Judge:

## I.

American Casualty Company (American Casualty) appeals the district court's grant of summary judgment in favor of United Southern Bank, United Southern Corporation, and Omnibank of Mantee. We vacate and remand.

## II.

American Casualty issued a directors and officers liability insurance policy to United Southern Corporation (USB). The policy insured the USB directors and officers against loss that they became legally obligated to pay for claims made against them, individually or collectively, for wrongful acts in the discharge of their duties as directors or officers. The policy excluded liability arising from dishonesty or in conjunction with personal profit or from past acts.

USB brought suit in Mississippi Chancery court against Omnibank of Mantee (the Bank of Mantee) and James R. Gray, who had been employed as president of USB's Olive Branch bank, for losses incurred by USB. The Bank of Mantee was Gray's former employer. In its third amended complaint, USB dropped its previously asserted request that the court determine the character and extent of Gray's misconduct. USB obtained a judgment, based on the chancellor's holding that Gray acted negligently in making various loans and violated fiduciary duties. The chancellor stated that he did not find Gray guilty of fraud or dishonesty. Gray is appealing that judgment, but it is executory. Gray has received a discharge in bankruptcy from some of his obligations.

American Casualty brought this action in district court for a declaration of the rights and obligations of the parties under the policy issued to USB. American Casualty

contended that the policy does not provide coverage for any of USB's alleged losses from Gray's conduct.

The district court granted USB's motion for partial summary judgment. The court held that the chancellor's finding in the state action that Gray acted negligently to the express exclusion of fraud or other similar misconduct precluded relitigation of the issue of intentional misconduct by Gray which could relieve American Casualty of liability. The district court also held that USB's claims for coverage were not within the dishonesty exclusion or the past acts exclusion. American Casualty appeals.

## III.

Federal law controls the procedural aspects of this case. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 n. 12 (5th Cir.1987), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987). Summary judgment is appropriate when the court determines that there are no genuine issues of material fact and the movant is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Russ v. International Paper Co.*, 943 F.2d 589, 590 (5th Cir.1991). When reviewing the pleadings, depositions, admissions, answers to interrogatories, and affidavits, the court must draw all reasonable inferences in favor of the non-moving party. *Russ*, at 590; *Randolph v. Laeisz*, 896 F.2d 964, 969 (5th Cir.1990).

American Casualty challenges the district court's grant of summary judgment for USB. American Casualty argues that the district court erred in: (A) applying collateral estoppel as its premise for finding no dispute of material fact, and (B) analyzing disputed issues of material fact.

### A. *Collateral Estoppel.*

#### 1. Waived?

American Casualty contends that USB waived the defense of collateral estoppel because it was not affirmatively pleaded.

* Chief District Judge of the Eastern District of Texas, sitting by designation.

■ Collateral estoppel is an affirmative defense under FED.R.CIV.P. 8(c) which if not pleaded is considered waived. *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 172 (5th Cir.1985). *See also Schuster v. Martin*, 861 F.2d 1369, 1371 n. 2 (5th Cir. 1988). "Where the matter is raised in the trial court in a manner that does not result in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is not fatal." *Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855–56 (5th Cir.1983). *See also Dennis v. General Imaging, Inc.*, 918 F.2d 496, 499–500 (5th Cir.1990). Here, the state court judgment was sufficiently raised in the trial court. American Casualty was not prejudiced in its ability to respond. USB's defense of collateral estoppel is properly before this court.

### 2. Effect?

■ A federal court must give a state court judgment the same preclusive effect it would have under that state's law. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Hogue v. Royse City*, 939 F.2d 1249, 1252 (5th Cir.1991).

■ The district court correctly stated the Mississippi law doctrine of collateral estoppel that parties will be precluded from relitigating a specific issue which was: actually litigated in the former action; determined by the former action; and, essential to the judgment in the former action. *Dunaway v. W.H. Hopper & Associates, Inc.*, 422 So.2d 749, 751 (Miss.1982). The district court examined the state action to determine whether the state court precluded relitigation on the issue of intentional misconduct, including fraud, dishonesty and personal profit motivation.

■ The district court, however, did not consider that "[a]t its core," the rule precludes *"parties* or [those] in *privity."* *State ex rel. Moore v. Molpus*, 578 So.2d 624, 640 (Miss.1991). (Emphasis added). Under Mississippi law a "final decision of an issue on its merits is normally thought preclusive *only* if there is an identity of parties from one suit to the next, and of their capacities as well." *Id.* (Emphasis

added). Mississippi has removed privity as a requirement in some other contexts. MISS.CODE Ann. § 11–7–20 (1991). But privity, or a relationship similar to privity, is still required to obtain the preclusive effect of collateral estoppel. *Molpus*, 578 So.2d at 640.

■ The question is, then, whether the summary judgment record establishes that American Casualty was in privity with any party to the state court action. USB contends that American Casualty was in privity with Gray in the prior suit.

The following three policy provisions are relevant:

5(c) The Insurer may at its option and upon request, advance on behalf of the Directors or Officers, or any of them, expenses which they have incurred in connection with claims made against them, prior to disposition of such claims, provided always that in the event it is finally established the Insurer has no liability hereunder, such Directors and Officers agree to repay to the Insurer, upon demand, all monies advanced by virtue of this provision.

6(d) The Bank and the Directors or Officers shall give the Insurer the right to associate itself in the defense and settlement of any claim that appears reasonably likely to involve the Insurer.

6(e) The Bank and the Directors or Officers, following the furnishing of notice as provided in Clauses 6(a) and 6(b) shall, as soon as practicable, furnish the Insurer with copies of reports, investigations, pleadings and all other papers in connection therewith.

There is some indication in the record that Gray's attorney was approved and paid for by American Casualty. But there is no evidence that American Casualty controlled or directed the litigation in state court. American Casualty was in an unusual situation. Two of its insureds were litigating against each other. Gray did not have the same interest that American Casualty had in differentiating his conduct between negligence and fraud. Gray had reasons not to have a judgment against him establish-

ing that he perpetrated a fraud, among them the inability to have the resulting debt discharged in bankruptcy. USB had reasons not to have a judgment of fraud against Gray. American Casualty's interests, however, were the opposite.

Before collateral estoppel may be enforced against American Casualty, "we should find that [it] had adequate incentive to litigate in the first case." *Molpus*, 578 So.2d at 643. "Where there is room for suspicion regarding the reliability of those first fact findings, collateral estoppel should never be applied." *M.E.S.C. v. Philadelphia Mun. Sep. Sch. D.*, 437 So.2d 388, 397 (Miss.1983). *See also Jordan v. McKenna*, 573 So.2d 1371, 1375 (Miss. 1990). Here, there is room for suspicion as to whether American Casualty had adequate incentive to litigate the issue of fraud in the state court case. *Cf. Jordan*, 573 So.2d at 1375. "Collateral estoppel binds only those who have already 'had their day in court' regarding the particular issue. Any other application of collateral estoppel would result in a denial of due process for those neither party nor privy to the prior action." *Weaver v. City of Pascagoula*, 527 So.2d 651, 652 (Miss.1988). Based on the record developed here, a determination of whether American Casualty was in privity, or in a relationship similar to privity, with a party to the state action would have to be too tenuous to support summary judgment. *Cf. Jones v. Southern Marine & Aviation Underwriters*, 888 F.2d 358, 363 (5th Cir.1989).

B. *No Disputed Issue of Material Fact?*

Although collateral estoppel will not support the district court's grant of summary judgment for USB, summary judgment would nevertheless be appropriate if there are no genuine issues of material fact. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Russ v. International Paper Co.*, 943 F.2d 589, 590 (5th Cir.1991). Summary judgment would be proper if there is no basis for an applicable policy exception for American Casualty's coverage liability.

1. Personal advantage and dishonesty exclusions.

■ Policy provision 3(a) excludes claims against the officers or directors:

(2) based upon or attributable to their gaining in fact of any personal profit or advantage to which they were not legally entitled;

(5) brought about or contributed to by the dishonesty of the Directors or Officers.

The district court found that there was no intentional conduct by Gray which would make these exclusions applicable. The court's findings, however, were based on the chancellor's findings in the state court action which should not have been given collateral estoppel effect. The summary judgment record will not support a determination that this exclusion is inapplicable.

2. Past acts exclusion.

■ The policy also has a past acts exclusion which reads as follows:

It is hereby understood and agreed that the following endorsment [sic] applies solely to the coverage provided for the acguisition [sic] of Assets and Liability of The Olive Branch of Bank of Mantee.

Clause 3(b) of the Policy dealing with Exclusions, is hereby amended by the addition of the following paragraph (4) to said Clause:

3(b)(4) arising out of any alleged Wrongful Acts or Wrongful Acts which occurred on or before July 1, 1984.

All other provisions of the policy remain unchanged.

A Wrongful Act is defined under the policy as:

[A]ny actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by the Directors or Officers in the discharge of their duties solely in their capacity as Directors or Officers of the Bank, individually or collectively, or any matter claimed against them solely by reason of their being Directors or Officers of the Bank.

Directors and officers of the Olive Branch of the Bank of Mantee became covered under the policy as a result of the July 1, 1984, merger of that bank with USB.

American Casualty argues that amended policy provision 3(b)(4) excludes loss in connection with claims *arising out* of any alleged wrongful acts which occurred on or before July 1, 1984. American Casualty contends that prior to July 1, 1984, Gray promised the Bank of Mantee that he would breach his duty to USB for the benefit of the Bank of Mantee and that USB had already agreed to retain Gray as an officer, effective July 2, 1984. Although Gray's wrongful actions did not culminate in the injury to USB until after July 1, 1984, American Casualty asserts that there is a material dispute of fact as to whether Gray initiated the wrongful action after USB agreed to hire him and before July 1, 1984. American Casualty admits that a "claims made" policy can cover losses caused by wrongful actions preceding the policy term when a claim is brought during the policy period. But, it asserts that provision 3(b)(4), which excludes coverage of losses related to the assets and liabilities acquired from the Bank of Mantee arising out of any alleged wrongful acts or wrongful acts which occurred on or before July 1, 1984, excludes coverage for losses from wrongful acts associated with the Bank of Mantee regardless of when they occurred.

USB argues that the claim arose out of a wrongful act that occurred after July 1, 1984. Gray was not formally employed as an officer of USB until after July 1, 1984. USB contends that, based on the policy definition of a wrongful act, Gray could not have completed a wrongful act or error as a director or officer of USB in the discharge of his duties solely in his capacity as a director and officer of USB until after July 1, 1984. USB submits that exclusion 3(b)(4) questions whether USB's loss arose from *wrongful acts* which occurred on or before July 1, 1984, not loss from *activities* in general.

The district court held that USB only became involved after July 1, 1984, when Gray as a USB branch president impru-

dently made loans and issued credits for USB.

To read the definition of Wrongful Act as excluding any acts by directors and officers performed for the Bank of Mantee would render the endorsement meaningless. The summary judgment record does not reveal: what the merger contract provided; what effect actions taken by Gray prior to July 1, 1984, might have had on his subsequent actions as a USB bank officer; and, whether those subsequent actions may have "arisen out of" his prior dealings. The record is insufficient to establish that there is no genuine issue of material fact.

The district court erred in granting summary judgment in favor of USB. Because of our disposition of this case we need not address American Casualty's other allegations involving the trial court's refusal to grant oral argument and additional briefs.

## IV.

The summary judgment appealed from is VACATED and the case REMANDED.