**Louis CALDERA, Secretary of the Army, Appellant,**

v.

**NORTHROP WORLDWIDE AIRCRAFT SERVICES, INC., Appellee.**

No. 98–1500.

United States Court of Appeals, Federal Circuit.

Sept. 10, 1999.

Rehearing Denied; Suggestion for Rehearing En Banc Denied Dec. 13, 1999.

---

Armed Services Board of Contract Appeals ("Board"). *See In re Northrop Worldwide Aircraft Servs., Inc.,* ASBCA No. 45216, ASBCA No. 45877, 98–1 BCA ¶ 29,654, 1998 WL 151793 (Mar. 26, 1998). The Board reversed the contracting officer's final decision denying a claim by Northrop Worldwide Aircraft Services, Inc. ("NWASI") for reimbursement of legal costs. The Board found that legal costs incurred by NWASI in defending a wrongful discharge lawsuit brought by former employees in Oklahoma state court were reasonable and allocable to a cost-reimbursement contract NWASI had with the Army. The employees were allegedly discharged for unsatisfactory performance on the cost-reimbursement contract. Because the Board erred in not granting collateral estoppel effect to the Oklahoma state court proceedings, we reverse the Board's decision holding NWASI's claimed amounts for legal costs as allowable costs under the cost-reimbursement contract.

Domenique Kirchner, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, argued for appellant. With her on the brief were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, James M. Kinsella and Joseph A. Kijewski, Assistant Directors. Of counsel on the brief was Craig S. Clarke, Deputy Chief, Trial Attorney, Contract Appeals Division, U.S. Army Legal Services Agency, Arlington, Virginia.

Donald J. Kinlin, Thompson, Hine & Flory, LLP, Dayton, Ohio, argued for appellee. Of counsel on the brief was Rebecca B. Anaya.

Before MAYER, Chief Judge, and SCHALL and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

## DECISION

The Secretary of the Army ("Army") appeals from the final decision of the

## BACKGROUND

On June 9, 1987, the Army awarded a cost-reimbursement award fee contract to NWASI for the maintenance, supply, and transportation functions of the Directorate of Logistics Operations at Fort Sill, Oklahoma. The contract was modified by bilateral agreement in October 1988. The contract provided for payments on a cost basis plus discretionary bonuses dependent upon performance, the bonus was at least partially contingent upon NWASI's maintenance of 90% of the vehicles subject to the contract in operational order. The contract required NWASI to keep for inspection and verification log books of the vehicles being repaired.

The Army monitored NWASI's performance of the contract with unscheduled visits by Army Quality Assurance Evaluators ("QAEs"), the issuance of contract discrepancy reports ("CDRs") and weekly progress meetings. In November 1988, a QAE issued a CDR report for NWASI's

failure to meet the 90% operational rate. The Army had discretion to withhold part or all of the bonus for this deficient performance.

From October 1988 to February 1990, NWASI employed Charles Cook, Charlie Lewis, and Melvin Miller as Quality Control Inspectors in the Maintenance Division on NWASI's contract with the Army. They were employed "at will" and were responsible for inspection of vehicle maintenance at Fort Sill on the contract. On February 14, 1990, NWASI terminated Mr. Lewis for allegedly violating its rules by being away from his duty station and for harassment of fellow employees. On February 15, 1990, Mr. Miller was terminated for allegedly refusing to perform a requested inspection. On February 23, 1990, Mr. Cook was terminated for allegedly violating NWASI's rules against fighting and for harassment.

On February 15, 1990 (the same day he was terminated) Mr. Miller complained to the Army Criminal Investigation Division ("CID") that NWASI might be committing fraud in its inspections. Specifically, he alleged that NWASI employees were hiding log books to make it appear that the 90% readiness rate was being met. Eventually the CID completed its investigation and concluded that there was insufficient evidence to prosecute NWASI for the alleged offenses.

■ On May 9, 1990, Miller, Cook, and Lewis filed a civil suit against NWASI in Oklahoma state court, claiming wrongful termination in that they were discharged for refusing to follow NWASI directions and participate in fraud against the Army in connection with the contract.[1] The case was tried before a jury and at the close of evidence the judge instructed the jury that "Plaintiffs claim: a significant factor in Defendant's decision to terminate Plain-

tiffs was that Plaintiffs refused to violate Oklahoma's public policy by committing acts of fraud against the government in violation of a government contract." The court went on to instruct the jury on the essential elements of the claim that the plaintiffs had to establish by a preponderance of the evidence: (1) that they were employees of NWASI; (2) that during the terms of their employment they were asked to commit acts in violation of Oklahoma's public policy which they refused to do; (3) that they were discharged by NWASI and the discharge was significantly motivated by NWASI's desire to retaliate against them for their refusal; and (4) that they sustained actual damages by reason of the termination. On September 20, 1991, after a five-day trial, the jury found for the plaintiffs and awarded plaintiffs $900,000 in compensatory damages and $900,000 in punitive damages. The jury verdict was upheld on appeal. The Oklahoma Supreme Court denied certiorari.

Before the Oklahoma jury verdict was rendered, the contracting officer ("CO") granted NWASI's request for reimbursement of legal fees incurred in defending the lawsuit and paid NWASI $62,500. On May 20, 1992, NWASI submitted a certified claim for legal fees in the additional amount of $139,000. The CO denied this claim and later demanded and received a refund of the fees already paid. On December 2, 1992, NWASI submitted a certified claim for that amount which had been denied. The CO again denied the claim with a final decision on January 4, 1993. NWASI appealed this decision to the Board. On March 31, 1995, NWASI made an amended demand for $291,208 in legal fees, including the appeal expenses.

The Board denied the parties' cross motions for summary judgment on February 15, 1995. *See In re Northrop Worldwide*

---

1. Oklahoma recognizes an exception to the at-will employment doctrine; an employee has a tort cause of action for wrongful discharge when he or she is "discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." *Burk v. K–Mart Corp.*, 770 P.2d 24, 29 (Okla.1989).

*Aircraft Servs., Inc.*, ASBCA No. 45216, ASBCA No. 45877, 95–1 BCA ¶ 27,503, 1995 WL 74988 (Feb. 15, 1995). The Board concluded that costs in defending the lawsuit may be allocable to the contract if they were necessary to the overall operation of NWASI's business, and if they were the types of costs which would be incurred by a reasonably prudent person in the conduct of a competitive business.[2] The Board concluded that it would be necessary for the parties to offer evidence as to the reasonableness, at the time of the litigation, of incurring fees to defend the litigation. On September 19, 1996, the Board denied NWASI's renewed motion for summary judgment finding that the reasonableness of the legal fees was a dispute that required a trial. *See In re Northrop Worldwide Aircraft Servs., Inc.*, ASBCA No. 45216, ASBCA No. 45877, 96–2 BCA ¶ 28,574, 1996 WL 549346 (Sept. 19, 1996). The Board determined that

> the issue of whether appellant's [NWASI's] legal costs are allocable under FAR 31.201–4 depends on whether the claimed costs were "necessary to the overall operation of the business." We have stated that this criterion for allocability is extremely broad and does not require that a connection be shown between the cost incurred and a Government contract.

**2.** Under the Federal Acquisition Regulations,

> A cost is allocable if it is assignable or chargeable to one or more cost objectives on the basis of relative benefits received or other equitable relationship. Subject to the foregoing, a cost is allocable to a Government contract if it—
> (a) Is incurred specifically for the contract;
> (b) Benefits both the contract and other work, and can be distributed to them in reasonable proportion to the benefits received; or
> (c) Is necessary to the overall operation of the business, although a direct relationship to any particular cost objective cannot be shown.
> 48 C.F.R. 31.201–4 (1998).

**3.** Under the FAR, two factors to consider in determining the allowability of a cost are rea-

*Id.* at n. 5. The Board went on to state that the issue of whether the legal costs were allowable costs[3] involved a consideration of reasonableness[4] and that there was a genuine issue of material fact as to whether NWASI took the actions of a prudent business person that precluded summary judgment.

After hearing testimony which covered all the issues presented, including whether or not fraud was committed, the Board found for NWASI on the issue of entitlement, stating that it was reasonable for NWASI to incur the legal fees in defense of the lawsuit. The Board found no substantial evidence that NWASI was engaged in conduct to defraud the Army, even after considering the Oklahoma jury verdict. Before us now is the Army's appeal of the Board's decision reversing the CO's rejection of NWASI's claim for legal costs.

## DISCUSSION

### 1. Standard of Review

Board findings of fact will be set aside "if arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if not supported by substantial evidence." 41 U.S.C. § 609(b) (1994). Legal determinations are reviewed *de novo*. *See id.*

sonableness and allocability. *See* 48 C.F.R. 31.201–2(a) (1998).

**4.** According to the relevant regulations,

> [a] cost is reasonable if, in its nature and amount, it does not exceed that which would be incurred by a prudent person in the conduct of competitive business. Reasonableness of specific costs must be examined with particular care in connection with firms or their separate divisions that may not be subject to effective competitive restraints. No presumption of reasonableness shall be attached to the incurrence of costs by a contractor. If an initial review of the facts results in a challenge of a specific cost by the contracting officer or the contracting officer's representative, the burden of proof shall be upon the contractor to establish that such cost is reasonable.
> 48 C.F.R. 31.201–3(a) (1998).

## 2. Analysis

The Army argues that the Board did not properly interpret FAR 31.201-4, the regulation governing allocable costs for the contract at issue. The Army contends that the standard for allocability is benefit to the government. The Army also argues that in this case, there was no benefit to the government for reimbursing a contractor for defending a lawsuit wherein the contractor was found to have wrongfully terminated employees who refused to commit fraud against the government; the government could not tell if it would be benefited until the close of the Oklahoma litigation.

The Army next argues that the Board erred as a matter of law in determining the underlying reasons for which NWASI terminated the three employees. The Army now asserts that the Board should have applied the doctrine of collateral estoppel, also known as issue preclusion, to the Oklahoma jury verdict and found that the employees had been terminated wrongfully for refusal to commit fraud. The Army states that since the Oklahoma jury verdict was based on the plaintiffs' claims that they had been terminated for refusal to violate public policy – to commit fraud against the Army – the Board erred in reconsidering this issue and finding that they had been terminated for cause.

Based on its finding, the Board concluded that terminating workers for unsatisfactory performance or misconduct is necessary for the proper performance of the contract, and the fees for defending a wrongful termination lawsuit in such a situation are reasonable contract costs. The Army, however, contends that the Board should not have made such a determination. The Army further asserts that a contractor's termination of its employees for refusing to commit fraud does not benefit the government, therefore legal costs in defending a subsequent wrongful termination lawsuit is not allocable to the contract.

The Army concedes that the Board did not address the issue of collateral estoppel and that it did not use the terms "collateral estoppel" or "issue preclusion" in making its arguments before the Board. The Army, however, contends that it did not waive the preclusive effect of the state court judgment. The Army argues that the Board and NWASI were on notice of the Army's contention that the jury verdict and subsequent affirmance controlled the issue of whether NWASI wrongfully terminated the employees for refusal to participate in fraud. The Army contends that it made such assertions in its answers and in its summary judgment briefs. The Army further urges that courts of appeals have *sua sponte* applied the doctrines of res judicata and collateral estoppel even if they have not technically been pleaded, but a prior adjudication has been brought to the attention of the court.

Finally, the Army questions the Board's jurisdiction to make certain factual determinations in the case. Under the Contract Disputes Act of 1978 ("CDA"),

> Each agency board shall have jurisdiction to decide any appeal from a decision of a contracting officer (1) relative to a contract made by its agency, and (2) relative to a contract made by any other agency when such agency or the Administrator has designated the agency board to decide the appeal. In exercising this jurisdiction, the agency board is authorized to grant any relief that would be available to a litigant asserting a contract claim in the United States Court of Federal Claims.

41 U.S.C. § 607(d) (1998). The CDA also states that

> All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer. Each claim by a contractor against the government relating to a

contract and each claim by the government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim. *The preceding sentence does not apply to a claim by the government against a contractor that is based on a claim by the contractor involving fraud.* The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor. The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter. Specific findings of fact are not required, but, if made, shall not be binding in any subsequent proceeding. The authority of this subsection shall not extend to a claim or dispute for penalties or forfeitures prescribed by statute or regulation which another Federal agency is specifically authorized to administer, settle, or determine. *This section shall not authorize any agency head to settle, compromise, pay, or otherwise adjust any claim involving fraud.*

41 U.S.C. § 605(a) (1998) (emphasis added).

The Army argues that this means that agency boards of contract appeals do not possess jurisdiction to hear claims involving fraud – and this interpretation is supported by the Board's decisions and case law. It contends that because the Board lacks jurisdiction to entertain the merits of the Army's assertions of fraud, the Board erred in determining that the employees were not terminated because they refused to participate in fraud against the government. The Army reasons, however, that the Board could give collateral estoppel effect to the Oklahoma proceedings and rely upon the verdict to find that NWASI had attempted to commit fraud against the government.

NWASI argues that the legal costs incurred in defending the Oklahoma lawsuit were reasonable, and therefore allowable under the contract. NWASI asserts that in the two summary judgment decisions preceding the Board decision on appeal, the Board determined that the issue of allocability does not require a direct relationship between the cost incurred and a government contract – the Board determined that legal fees are allocable as necessary operating costs, therefore the issue before the Board at trial was the reasonableness of the fees. NWASI argues that it treated the fees as direct contract costs and the Board recognized that the discharged employees were inspectors under the subject contract with the Army and their discharge was related to their performance. NWASI points out that the fees were initially considered by the Army to be reasonable, but after the jury verdict, the Army determined that they were unreasonable. NWASI points to several factors indicative of the reasonableness of its decision to defend the case: NWASI presented substantial evidence from its attorneys, along with privileged documents, to show that NWASI had no evidence of any fraudulent activity on the part of its employees; the Oklahoma trial judge did not find the employees' evidence to be clear and convincing and therefore refused to raise the cap on punitive damages; and the Oklahoma Supreme Court in considering NWASI's petition for certiorari denied the petition by a five to three vote. NWASI asserts that the sum of these factors indicate that it was reasonable for NWASI to defend the lawsuit.

NWASI next addresses the collateral estoppel issue. NWASI argues that the Army has repeatedly shifted its position as to the weight the Oklahoma jury verdict should be given. NWASI contends that the Army has failed to raise properly the defense of issue preclusion for seven years, therefore the Army has waived collateral estoppel and allowing the government to argue it now would only complicate matters.

NWASI argues that even if the Army has not waived collateral estoppel, the ASBCA made an appropriate factual de-

termination that the Oklahoma courts did not actually make any findings of fraud by NWASI, therefore collateral estoppel cannot apply to that issue. NWASI asserts that the issue of whether NWASI committed fraud was not actually decided by the Oklahoma jury because the jury was given an alternative reason to find that the employees were wrongfully terminated. NWASI argues that along with the elements of wrongful termination, the jury was instructed that

> If you find from the evidence that the reason given by the Defendant to terminate Plaintiffs was not true, then you may find reason to believe that Plaintiffs were discharged because they refused to commit acts in violation of Oklahoma's public policy.

NWASI therefore concludes that if the jury merely disbelieved NWASI's explanations for discharge, it was permitted to assume the discharge was in violation of public policy. NWASI claims that there was no need for the jury to find affirmatively that the plaintiffs were asked to commit acts of fraud. NWASI contends that the appellate court affirmed the jury decision, but noted that there was some evidence of retaliatory conduct and made no finding that NWASI attempted to commit fraud.

NWASI argues that it was appropriate for the Board to decide independently whether NWASI had attempted to defraud the government. NWASI asserts that the Board examined the jury verdict, the instructions, the transcripts, and heard extrinsic evidence from attorneys and witnesses who had appeared in the Oklahoma trial; the Board also heard testimony regarding jurors' post-trial statements that they did not find that NWASI had engaged in fraudulent conduct. NWASI claims that the jurors stated that they did not really believe NWASI had wrongfully terminated the employees, but they wanted to send NWASI a message that they were wasting money by managing the contract inefficiently.

Finally NWASI argues that the Board had jurisdiction because the Board was deciding the merits of NWASI's claim for reimbursement of legal feels, not the merits of a government claim or counterclaim for fraud. NWASI contends that there is no dispute that the NWASI actually incurred the fees sought.

█ The first issue we need to address is that of the Board's jurisdiction. The cases cited by the Army for the proposition that the Board may have lacked jurisdiction to decide fraud claims deal with situations in which a claim for costs submitted to the government was allegedly based on falsified invoices, receipts, or other false data. *See In re Beech Gap, Inc.,* ENGBCA No. 5585, 95–2 BCA ¶ 27,879, 1995 WL 452174 (July 28, 1995) (allegedly false reports to government); *In re P.H. Mechanical Corp.,* GSBCA No. 10567, 94–2 BCA ¶ 26,785, 1994 WL 64192 (Feb. 28, 1994) (receipts, invoices, and records submitted in support of claim were allegedly falsified); *In re M & M Servs., Inc.,* ASBCA 28712, 84–2 BCA ¶ 17,405, 1984 WL 13480 (Apr. 19, 1984) (allegedly false data in submitted invoice); *In re Comada Corp.,* ASBCA 26599, 83–2 BCA ¶ 16,681, 1983 WL 13084 (June 20, 1983) (government counterclaim that contractor misrepresented facts to government). In this case, the parties do not dispute that NWASI actually incurred the legal fees claimed and the Army makes no allegations that NWASI cannot adequately support its filed claims with appropriate bills and receipts. Therefore, the Board has jurisdiction to hear and decide NWASI's claim for reimbursement of legal costs. Whether NWASI may have asked its employees to engage in fraud is a separate matter that the Board should not have determined because of the doctrine of collateral estoppel, as explained below. Therefore, we need not decide whether the Board had jurisdiction to make factual determinations concerning NWASI's alleged fraudulent behavior leading to the discharge of Lewis, Miller, and Cook.

■ Next, we turn to the preclusive effect of the Oklahoma jury verdict. The threshold question is whether the Army has waived its collateral estoppel argument. Under Fed.R.Civ.P. 8(c) and ASBCA Rule 6(b), collateral estoppel is an affirmative defense, which must be timely pled or generally it is deemed waived.[5] The Army concedes that it did not affirmatively plead before the Board that the Oklahoma state court proceedings should be granted collateral estoppel effect and that it could have waived it. Some courts of appeals, however, have held that failure to raise collateral estoppel as an affirmative defense by responsive pleading is not necessarily fatal if raising the issue later will not result in surprise or unfair prejudice. *See Smith v. Sushka,* 117 F.3d 965, 969 (6th Cir.1997) (failure to raise collateral estoppel as an affirmative defense in a timely manner is not fatal because no surprise or unfair prejudice resulted); *Studio Art Theatre of Evansville, Inc. v. City of Evansville,* 76 F.3d 128, 130 (7th Cir.1996) (district court could raise issue of collateral estoppel *sua sponte* because the benefits of precluding relitigation of issues ran not only to litigants but also to the judicial system); *American Cas. Comp. v. United S. Bank,* 950 F.2d 250, 253 (5th Cir.1992) (collateral estoppel could be applied by trial court even if not properly pled if party against whom it was applied was not prejudiced and the earlier judgment was raised in such a way as to not result in unfair surprise). Some courts have even held that raising collateral estoppel for the first time on appeal is not fatal. *See Clements v. Airport Auth. of Washoe County,* 69 F.3d 321, 329–30 (9th Cir. 1995); *cf. Thompson–Hayward Chem. Co. v. Rohm & Haas Co.,* 745 F.2d 27, 32–

33, 223 USPQ 690, 693 (Fed.Cir.1984) (giving estoppel effect to invalidity judgment on appeal even though infringer did not challenge validity at trial). In *Clements,* the court recognized that issue preclusion serves an important public interest in avoiding inconsistent results in separate judicial proceedings. *See Clements,* 69 F.3d at 330. The court reasoned that because the doctrine of collateral estoppel only bars the re-litigation of issues that have been actually litigated and necessarily decided, in such a situation "[w]here the plaintiffs have had a full and fair opportunity to actually litigate the issue and did in fact litigate it, they can not ordinarily be prejudiced by subsequently being held to the prior determination." *Id.* at 330.

■ Although NWASI argued in its filed briefs that the Army had waived its collateral estoppel argument, counsel for NWASI conceded during oral argument that collateral estoppel may be raised for the first time on appeal, the test being whether it would be just and equitable to apply the doctrine in the particular case before the court. In the present case, NWASI would not be surprised or unfairly prejudiced by the application of the doctrine of collateral estoppel. NWASI and the Board were fully aware of the Oklahoma proceedings and were aware that, at the least, the Army considered the Oklahoma jury verdict to be strong evidence of improper behavior on the part of NWASI. Furthermore, NWASI presented evidence before the Board as to why the Board should not consider the Oklahoma jury verdict to be determinative that NWASI had engaged in fraud against the government. Finally, NWASI, arguing in the alternative, has briefed the issue of why,

---

5. Federal Rule of Civil Procedure 8(c) states that:

> In pleading to a preceding pleading, *a party shall set forth affirmatively* accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, *estoppel,* failure of consideration, fraud, illegality, injury by fellow servant, laches, license, pay-

ment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

even if not waived, collateral estoppel should not apply in this situation. Because NWASI concedes that the Army may raise collateral estoppel as a defense for the first time on appeal if the court considers it just and equitable to do so, we will consider the Army's collateral estoppel defense.

 Under the full faith and credit statute, 28 U.S.C. § 1738 (1994),[6] "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the state from which the judgments emerged would do so." *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *see United Techs. Corp. v. Chromalloy Gas Turbine Corp.,* 189 F.3d 1338, 1343 (Fed.Cir.1999). Therefore, in determining whether the Oklahoma jury verdict (and subsequent affirmance) in the wrongful termination suit had preclusive effect on the Board,[7] we follow the Oklahoma law of collateral estoppel which requires that: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was necessary to the final judgment; and (4) the party against whom estoppel is invoked was adequately represented in the prior action. *See Danner v. Dillard Dep't Stores, Inc.,* 949 P.2d 680, 682 (Okla.1997); *National Diversified Bus. Serv., Inc. v. Corporate Fin. Opportunities, Inc.,* 946 P.2d 662, 666–67 (Okla.1997).

 The Board considered the Oklahoma jury verdict and the decisions of Oklahoma state courts on appeal, but weighed them with the other evidence presented. The Board was not troubled that its findings appeared to be inconsistent with those of the Oklahoma courts, stating that "[i]t is entirely appropriate for different factfinders to make different assessments of essentially the same evidentiary record" and citing *Mendenhall v. Cedarapids, Inc.,* 5 F.3d 1557, 1571 (Fed.Cir. 1993), as support for this proposition. The *Cedarapids* decision, however, is inapposite in the present case. *Cedarapids* concerned the *stare decisis* effect of a prior patent infringement lawsuit against a different alleged infringer. Although the evidence concerning the patents was substantially the same in the two cases, they involved different infringers, therefore the alleged infringer in the later suit was not a party to the first suit, was not represented in the first suit and did not have an opportunity to fully and fairly litigate any issues in the first suit. That was clearly a different situation than the case before us now in which NWASI was a party in the Oklahoma proceedings and is a party in the Board proceedings on appeal.

NWASI's main argument against the application of collateral estoppel to bar the Board's decision concerning NWASI's alleged fraudulent behavior is that the jury did not make a specific finding that NWASI committed fraud. NWASI argues that the jury instructions provided the jury with an alternative reason to find that Miller, Lewis, and Cook were wrongfully terminated without necessarily finding that NWASI had terminated the three employees in retaliation for refusing to commit fraud against the government. We do not read the jury instructions as providing

---

6. The Full Faith and Credit Statute states in relevant part that "[s]uch Acts, records and judicial proceedings [of any State, Territory, or Possession of the United States] or copies thereof ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

7. Although proceedings before the Board are not actual judicial proceedings the parties do not dispute that "the same principles of judicial efficiency which justify application of the doctrine of collateral estoppel in judicial proceedings also justify its application in quasi-judicial [agency] proceedings." *Graybill v. United States Postal Serv.,* 782 F.2d 1567, 1571 (Fed.Cir.1986) (holding that Maryland state court decision had preclusive effect on Merit Systems Protection Board proceedings).

such an alternative. The trial court instructed the jury that "your *only* duty is to determine whether Plaintiffs were terminated in violation of public policy." The court explained that "Plaintiffs claim: a significant factor in Defendant's decision to terminate Plaintiffs was that Plaintiffs refused *to violate Oklahoma's public policy by committing acts of fraud against the government in violation of a government contract.*" (Emphasis added.) The court then described the elements of such a claim, and instructed the jury that the claim had to be established by a preponderance of the evidence. The court did state that "if you find from the evidence that the reason given by the Defendant to terminate Plaintiffs was not true, then you may find reason to believe that Plaintiffs were discharged because they refused to commit acts in violation of Oklahoma's public policy." NWASI claims that this instruction meant that the jury could find NWASI liable if they merely disbelieved NWASI's evidence. But this instruction does not tell the jury it may disregard the burden of proof. The instruction that NWASI claims creates an "alternative," combined with the other instructions, merely states that if Plaintiffs submit sufficient evidence of wrongful discharge, and Defendants did not present credible reasons for discharge in rebuttal, the jury may find that the Plaintiffs were discharged because they refused to commit acts of fraud. Therefore, by finding NWASI liable in the wrongful termination suit, the jury necessarily found that the plaintiffs were discharged in retaliation for refusing to violate public policy, i.e., for refusing to engage in fraud.

Because the issue of NWASI's fraudulent behavior was actually litigated with adequate representation in the Oklahoma trial and was necessary to the final judgment, and the issue was again before the Board in NWASI's appeal of the CO's final refusal of its claims for reimbursement of legal costs, the Board should have granted preclusive effect to the Oklahoma proceedings. The Board committed reversible error in deciding the issue of whether or not NWASI had attempted to defraud the government anew.

 The final issue before us is whether NWASI's legal costs are allocable to the cost reimbursement contract and, therefore, allowable costs. NWASI claims that this is an issue of reasonableness that should be viewed from the perspective of a reasonable business person in a similar situation. The Army argues that the cost is allocable only if there is some benefit to the government for incurring the cost. It is established that the contractor must show a benefit to government work from an expenditure of a cost that it claims is "necessary to the overall operation of the [contractor's] business." *See FMC v. United States,* 853 F.2d 882, 885 (Fed.Cir. 1988); *Lockheed Aircraft Corp. v. United States,* 179 Ct.Cl. 545, 375 F.2d 786, 793–94 (1967).[8] The Board erred in failing to make a determination of whether or not NWASI's defense of the Oklahoma lawsuit benefited the government. We can discern no benefit to the government in a contractor's defense of a wrongful termination lawsuit in which the contractor is found to have retaliated against the employees for the employees' refusal to defraud the government.

## CONCLUSION

Because the Armed Services Board of Contract Appeals erred in failing to grant preclusive effect to the Oklahoma state court proceedings and because the government did not benefit from NWASI's de-

8. The regulation involved in *Lockheed* and *FMC* was Armed Services Procurement Regulation ("ASPR") 15–201.4, while the present case involves the Federal Acquisition Regulations ("FAR"). The benefit requirement, however, applies to the FAR because the FAR replaced the Defense Acquisition Regulations ("DAR") system, and the DAR system replaced the ASPR. *See FMC,* 853 F.2d at 884 n. 2. Furthermore, the regulation at issue in *FMC,* ASPR 15–201.4 (1983), is nearly identical to FAR 31.201–4.

fense of the Oklahoma lawsuit, we reverse the Board's decision reversing the CO's final denial of NWASI's claim for reimbursement of legal costs.

*REVERSED.*

## COSTS

Each party to bear its own costs.