**NORTHROP GRUMMAN CORPORATION, Military Aircraft Division, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 96–760C.

United States Court of Federal Claims.

March 1, 2006.

Joseph Francis Coyne, Jr., Sheppard, Mullin et al., Los Angeles, CA, for Plaintiff.

Deborah Ann Bynum, U.S. Department of Justice, Civil Div.–Commercial Litigation Br., Washington, DC, for Defendant.

### ORDER

HORN, Judge.

Plaintiff Northrop Grumman advised the court that it had filed an overhead claim at the Armed Services Board of Contract Appeals (ASBCA Nos. 55061, 55062), which included claims concerning the Georgia Production Site (GPS) facility. The GPS facility also is the subject of count XIII of the plaintiff's second amended complaint before this court. Both parties have agreed that the costs sought before the ASBCA (costs associated with general purpose assets) are different from the costs sought before this court (costs associated with special purpose TSSAM[1] assets). Therefore, neither party, nor this court, perceives there to be a jurisdictional issue stemming from the GPS-related claims in the two forums. However, because of the presence of the GPS facility in both claims, there remains the question of whether the cases should be consolidated. The Contract Disputes Act provides that:

> If two or more suits arising from one contract are filed in the United States Court of Federal Claims and one or more agency boards, for the convenience of parties or witnesses or in the interests of justice, the United States Court of Federal Claims may order the consolidation of such suits in that court or transfer any suits to or among the agency boards involved.

41 U.S.C. § 609(d) (2000). The parties have briefed the issue extensively. Plaintiff argues against consolidation; defendant argues for consolidation of the claims in this court, or, that the parties approach the ASBCA for a stay.

 This court is afforded broad discretion on whether or not to consolidate cases. *Morse Diesel Int'l, Inc. v. United States,* 66 Fed.Cl. 801, 804 (2005) (citing *Joseph Morton Co. v. United States,* 757 F.2d 1273, 1280 (Fed.Cir.1985)), *petition denied, In re Morse Diesel Int'l, Inc.,* 163 Fed.Appx. 878 (Fed. Cir.2006) (unpub.). Among the factors which have been considered by courts on the fact specific questions of consolidation of cases are:

(1) whether the dispute before the board and the court concern the same contract; (2) whether the claims before the court and the board duplicate claims or have overlapping and related issues; (3) whether

1. Tri–Service Stand-off Attack Missile.

plaintiff initially chose to appeal its claims before a court or a board; (4) whether one forum or the other has already made significant progress on the claims; (5) whether concurrent resolution would result in an inefficient allocation of the court's, board's, or party's resources; (6) whether separate forums would reach inconsistent results. *Morse Diesel Int'l, Inc. v. United States,* 66 Fed.Cl. at 804 (in which a later-filed General Service Administration Board of Contract Appeals case was transferred to and consolidated with the earlier Court of Federal Claims case, at the request of the government, and over the opposition of the plaintiff); *see also Precision Pine & Timber, Inc. v. United States,* 45 Fed.Cl. 134, 135–36, 138 (1999) (in which the plaintiff moved to transfer and consolidate a later-filed Agricultural Board of Contract Appeals (AGBCA) claim with the earlier Court of Federal Claims case, the government counter-moved to consolidate the claims in the AGBCA, and the court declined to transfer either case); *Giuliani Contracting Co. v. United States,* 21 Cl.Ct. 81, 82–84 (1990) (in which a later-filed Claims Court case was transferred and consolidated with an earlier ASBCA case, pursuant to the government's request, and over the plaintiff's opposition). Because of the classified aspects of the case before this court, security is another factor for consideration on the question of the consolidation of the two cases.

The complaint before the ASBCA was filed June 28, 2005. The TSSAM complaint before the court was filed before the ASBCA claim, and significant progress has been made in the court case, including extensive discovery and resolution of five counts of the originally filed complaint. Neither party has suggested that the court case should be transferred to and consolidated with the ASBCA case. Defendant seeks transfer of the ASBCA case to the Court of Federal Claims, or a stay of the ASBCA case. Plaintiff opposes the transfer and consolidation proposed by the plaintiff, and opposes a stay in the ASBCA case. This court can order consolidation. The court cannot order a stay in the ASBCA. The parties would have to agree and approach the ASBCA together.

Therefore, this court will only address the issues of transfer and consolidation.

Plaintiff argues that the claims in the two forums do not overlap each other. Plaintiff seeks to demonstrate to this court that certain GPS facilities and equipment were direct costs identifiable exclusively with the TSSAM contract. In contrast, plaintiff states that it seeks to demonstrate to the ASBCA that general purpose assets at the GPS and general purpose costs from its military contracts should be pooled and allocated to the overall business base of Northrop Grumman's Military Aircraft Systems Division—Southern California (MASD—SC). Northrop Grumman argues that these latter costs are properly characterized as overhead costs, and are allocable to its 1997, flexibly priced, military aircraft business, rather than to commercial contracts. If plaintiff were to prevail before the ASBCA, plaintiff estimates that about $8,000.00 of an alleged $34,738,643.00 million loss experienced in connection with the disposition of the general purpose assets would be allocable to the TSSAM contract.

Defendant acknowledges that the two claims are not seeking the same costs and do not overlap. Defendant, however, argues that, without consolidation, there is a risk of one forum making determinations that would collaterally estop the second forum. The doctrine of collateral estoppel appears to operate between the Boards of Contract Appeals and this court. *See United States v. Utah Constr. and Mining Co.,* 384 U.S. 394, 422, 418–23, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) (the Supreme Court found that the Atomic Energy Commission Advisory Board of Contract Appeals had the authority to make conclusive and final administrative determinations, based on the principles of collateral estoppel, and the Court stated: "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.") (citations omitted); *Crowley v. United States,* 398 F.3d 1329, 1342 (Fed.Cir.2005) (Dyk, J., concurring) (noting that with respect to the

Court of Federal Claims and the Merit Systems Protection Board, "a decision by one will be collateral estoppel as to the other"), *cert. denied,* —— U.S. ——, 126 S.Ct. 733, 163 L.Ed.2d 569 (2005); *Caldera v. Northrop Worldwide Aircraft Servs., Inc.,* 192 F.3d 962, 971 n. 7 (Fed.Cir.1999) ("[T]he parties do not dispute that 'the same principles of judicial efficiency which justify application of the doctrine of collateral estoppel in judicial proceedings also justify its application in quasi-judicial [agency] proceedings [at the ASBCA].'" (quoting *Graybill v. United States Postal Serv.,* 782 F.2d 1567, 1571 (Fed. Cir.1986))); [2] *Pound v. United States,* 51 Fed.Cl. 712 (2002) (in which the Court of Federal Claims gave *res judicata* effect to a Corps of Engineers Board of Contract Appeals decision concerning the termination of Pound's lease), *aff'd,* 63 Fed.Appx. 499, 502 (Fed.Cir.2003).

■ Although a determination by the ASBCA may be given preclusive effect in the Court of Federal Claims due to the principle of collateral estoppel, the court is not convinced that the requirements for collateral estoppel will be met in the two filed cases at issue, one at this court and one at the ASBCA. A party asking the court to apply collateral estoppel must establish that:

(1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been "a critical and necessary part" of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Dana v. E.S. Originals, Inc.,* 342 F.3d 1320, 1323 (Fed.Cir.2003) (quoting *Pleming v. Universal–Rundle Corp.,* 142 F.3d 1354, 1359 (11th Cir.1998)); *see also Mother's Restaurant, Inc. v. Mama's Pizza, Inc.,* 723 F.2d 1566, 1569 (Fed.Cir.1983) (describing the

same collateral estoppel factors as above, with the third factor above characterized as, "the determination of those issues in the prior action was necessary and essential to the resulting judgment ...") (citing 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice ¶ 0.443[1] (2d ed.1983) and Restatement (Second) of Judgments §§ 27, 39 (1980)). The Restatement provides the general rule of issue preclusion: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27, at 250 (1982).

■ The issues before this court and the ASBCA do not appear to be "identical," such that a preclusive effect should stem from the first forum to rule. In this regard, Northrop Grumman suggests, and has not been contradicted by the defendant in the filings before this court, that the issue before the ASBCA is an accounting issue based on the failure of the contractor to comply with Cost Accounting Standard (CAS) 418.40(c), which requires allocation based on general purpose assets exhibiting a "beneficial or causal relationship" to government contracts in general.[3] The essential issue before the ASBCA is not the same issue as is before this court, whether special purpose assets were constructed exclusively in support of the TSSAM contract or whether the assets exclusively benefitted the TSSAM contract.

Northrop Grumman also argues that the burden of proof is different between the two filed cases. *See* Restatement (Second) Judgments § 28(4) (1982) (indicating that a shifting burden of proof or a heavier burden of proof between two forums represents an exception to the general rule of preclusion). According to plaintiff, the government shoulders the burden of proof to demonstrate CAS noncompliance, citing *E–Systems, Inc.,* ASBCA Nos. 45771, 46409, 00–2 BCA ¶ 30,-982, at 152,917, 2000 WL 815415 (2000) (the

**2.** *Graybill* dealt with the MSPB; *Caldera* dealt with the ASBCA.

**3.** CAS 418–40(c) states that: "Pooled costs shall be allocated to cost objectives in reasonable pro-

portion to the beneficial or causal relationship of the pooled costs to cost objectives ...." 48 C.F.R. § 9904.418–40(c) (Oct. 1, 2005).

burden of proof is on the government for CAS noncompliance). *See also* FAR 30.605(i) (processing noncompliances: if the contractor does not correct the CAS noncompliance within the specified time, the CFAO (Cognizant Federal Agency Official) shall follow the procedures in FAR 30.604(i) (Remedies)), 48 C.F.R. § 30.605(i) (Oct. 1, 2005); FAR 604(i) (remedies: the CFAO shall withhold amounts from CAS-covered contracts and/or issue a final decision and unilaterally adjust the contracts to make the government whole), 48 C.F.R. § 604(i) (Oct. 1, 2005); *Litton Systems, Inc.*, ASBCA Nos. 37131, 37137, 94-2 BCA ¶ 26,731, at 133,022, 1994 WL 65121 (1994) ("In a Government claim and specifically one alleging CAS noncompliance, the burdens of proof and persuasion ultimately lie with the Government."). In this court, the burden of proving termination costs is on Northrop Grumman. *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 765, 767–68 (Fed.Cir.1987) (Lisbon had the burden of proving that the amounts claimed were allowable termination costs);[4] *White Buffalo Constr., Inc. v. United States*, 52 Fed.Cl. 1, 5, 13, *dismissed by agreement*, 45 Fed.Appx. 906 (2002); *Info. Sys. & Networks Corp.*, ASBCA No. 42659, 00-1 BCA ¶ 30,665, at 150,420, 1999 WL 1049634 (the contractor has the burden of proof to establish the costs of a termination for convenience), *recons. denied*, ASBCA 42659, 00-1 BCA ¶ 30,866, 2000 WL 362427 (2000); *see also Bath Iron Works Corp. v. United States*, 34 Fed.Cl. 218, 231–32 (1995), *aff'd*, 98 F.3d 1357 (Fed.Cir.1996) (table).

It appears, based on the filings before this court, that the issue at the ASBCA on cost pooling and cost allocation to the MASD—SC's larger business base reflects a different focus from this court's ultimate question on TSSAM direct costs associated with the GPS facility. A ruling on one issue in one forum should not, in fairness, be preclusive on the different issue in the other forum. However, a ruling and the underlying reasoning by

either the court or the Board would be of interest to the other, and perhaps persuasive, albeit not binding.

Northrop Grumman points out that its ASBCA case involves more than 200 flexibly-priced contracts on which some work was performed by MASD—SC during 1997. Against the approximately $8000.00 potentially allocable against the TSSAM contract, about $13,418,700.00 are potentially allocable against a B–2 contract, and the remainder of the $34,738,643.00 in overhead costs at issue before the ASBCA would be allocable over the remaining 198–plus contracts. Because of the more than 200 contracts involved in the ASBCA overhead claim, five representative contracts, including the B–2 contract noted above, were selected to prosecute the case before the ASBCA. TSSAM was not selected as a representative contract. As plaintiff points out, consolidation under these facts would be an unfortunate precedent for indirect cost disputes in general, with any number of the over 200 contracts which may be in litigation serving as the basis for potentially divesting the Boards of Contract Appeals of jurisdiction. The court will be cautious in applying the consolidation statute under these facts and circumstances. Northrop Grumman advises that the parties before the ASBCA are currently in discovery, and anticipates resolution of the ASBCA claims through motion practice.

Turning to security concerns, with respect to the ASBCA case, Northrop Grumman advises that the complaint and other submissions to the Board, the underlying audit reports, and the negotiations between the parties, have all been unclassified. Northrop Grumman does not contemplate that the matters before the ASBCA will stray into classified matters. Defendant has indicated that government attorneys may need to review the classified portions of the TSSAM contract in order to properly pre-

---

**4.** The Federal Circuit in *Lisbon* concluded, however, that the government has the burden of proof on whether a termination for default was justified and, if not justified, would be converted into a termination for the convenience of the government, before reaching the issue of which party has the burden of proof on demonstrating

termination costs. *Lisbon Contractors, Inc. v. United States*, 828 F.2d at 764, 765; *see also McDonnell Douglas Corp. v. United States*, 323 F.3d 1006, 1013–18 (Fed.Cir.2003) (the government bears the burden of proof on whether a termination for default was justified), *reh'g and reh'g en banc denied* (2003).

pare for the ASBCA case. Other than that limited excursion, there is no indication from the parties of a pervasive need for classified material in support the ASBCA case. If, however, security needs were to become a problem in the ASBCA case, the court would seriously entertain reconsideration of the consolidation issue and a motion from the defendant to do so.

Defendant also suggests that the parties request that the ASBCA stay proceedings before it, pending a decision by this court on the GPS claims. The parties are free to request a stay in the Board proceedings, but the court's understanding is that the plaintiff is adamantly opposed to such action. At this point, the court will not order consolidation of the two cases pursuant to 41 U.S.C. § 609(d), and takes no position on the issue of a requested stay, respecting the deliberations and procedures of another forum as beyond the scope of this court.

**IT IS SO ORDERED.**