FMC CORPORATION, Appellant,

v.

UNITED STATES, Appellee.

Appeal No. 87–1423.

United States Court of Appeals, Federal Circuit.

Aug. 5, 1988.

Lane L. McVey, McKenna, Conner & Cuneo, Washington, D.C., for appellant. Also on the brief was William W. Warren, FMC Corporation, Minneapolis, Minn.

Eric L. Miller, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for appellee. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Mary Mitchelson, Asst. Director. Also on the brief was Eunice W. Andrews, Office of General Counsel, Dept. of the Navy, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, BALDWIN, Senior Circuit Judge, and NIES, Circuit Judge.

NIES, Circuit Judge.

FMC Corporation appeals the decision of the Armed Services Board of Contract Appeals (ASBCA), *FMC Corporation*, ASBCA No. 30,130, 87–2 B.C.A. (CCH) ¶ 19,791 at 100,133 (April 30, 1987), which denied FMC's claim seeking to recover litigation expenses, incurred in connection with a particular government contract, as indirect costs allocable to other government contracts. Jurisdiction over FMC's appeal, brought pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–13 (1982), rests upon 28 U.S.C. § 1295(a)(10) (1982). We affirm.

I

BACKGROUND

FMC, and specifically its Northern Ordinance Division (NOD), accepted a purchase order from General Dynamics Corporation in connection with the latter's contract with the government for work on missile tubes for the TRIDENT submarine. That work was completed in 1977. In 1978, FMC demanded $10.5 million from General Dynamics for alleged increased costs incurred for the work. Two years later, FMC sued General Dynamics. The parties settled that suit for $3.25 million in 1983. Litigation expenses were not specifically covered by the settlement. FMC recorded the litigation expenses as general and administrative (G & A) expenses, thereby allocating them as indirect costs to all of its government contracts (over 90) during the years 1977 through 1983.[1] The total amount in dispute is approximately $1,777,773. The TRIDENT fees are broken down as follows: 1977—$6,353; 1978—$8,008; 1979—$65,204; 1980—$146,266; 1981—$443,500; 1982—$859,113; and 1983—$249,329.

---

1. The great bulk of litigation expenses for which FMC seeks allocation arose from the TRIDENT litigation. FMC also incurred a much lesser amount of litigation expenses under another government contract (VOUGHT) in which FMC was prime contractor. The litigation expenses are treated together for purposes of the subsequent analysis.

The Defense Contract Audit Agency (DCAA) was responsible for approving 1977 G & A expenses in connection with FMC pricing proposals on government contracts. Beginning in 1978, the Administrative Contracting Officer (ACO) had that responsibility, with the advice of the DCAA. DCAA audit reports for the years 1977 and 1978 did not question FMC's line item estimate for "professional costs." Thereafter, FMC notified the DCAA that an additional $100,000 in legal fees would be incurred in 1979. Sometime before October 31, 1980, government auditors notified FMC that they questioned FMC's allocation of TRIDENT legal costs as G & A expenses. A meeting between the ACO, DCAA, and FMC representatives in November 1980 failed to resolve the allocation issue. For provisional billing purposes until the parties resolved the dispute, FMC agreed to separate its TRIDENT litigation expenses from G & A expenses. The government does not challenge FMC's allocation for 1977 and 1978. The dispute on appeal involves only the years 1979–83, for which the ACO has not approved final G & A expense amounts.

On March 2, 1984, FMC demanded a decision by the ACO, pursuant to the CDA, on "whether the Government will allow as indirect costs under each Government contract and order active during the period from 1 January 1979 through 31 December 1983, the pro rata share of FMC's TRIDENT litigation expenses incurred during that period." Three days later the ACO issued a "Notice of Intent to Disallow or Not Recognize Costs." In June of 1984, the ACO issued a final decision holding that the TRIDENT litigation expenses were unallowable as indirect costs attributable to FMC's other contracts. FMC's appeal to the board followed.

The board found, and the parties agree, that the Armed Services Procurement Regulations (ASPR)—quoted *infra*—govern allowable costs for the contracts at issue.[2] Applying those regulations, the board found a direct relationship between the legal expenses associated with the TRIDENT claim and the TRIDENT purchase order.[3] It noted that such expenses were incurred to recover amounts believed due under the purchase order and that FMC recorded the settlement of its claim on its books as income to that order. Thus, according to the board, because the claim expenses were incurred specifically for, and could be identified specifically with, the TRIDENT purchase order, they were not indirect costs under the ASPR definitions. Although the board acknowledged that FMC's experience with the TRIDENT claim educated FMC personnel in government contract management and administration, it concluded that that benefit was too remote and insubstantial to justify pro rata allocation of the TRIDENT legal costs as a G & A expense to all contracts.

Turning to the estoppel issue, the board found no established practice of governmental approval or acquiescence upon which FMC could reasonably rely for its allocation claim. FMC's disclosure statements to the government did include a line item for "professional services." The board found those statements too vague and general, however, to constitute notice that FMC would allocate the litigation expenses in issue as indirect costs. Finally, the board noted that the ACO and DCAA consistently questioned FMC's allocation for each of the years at issue. Consequently, it held that the government was not estopped to disallow or not recognize improperly allocated costs.

**2.** The Defense Acquisition Regulations (DAR), formerly known as the Armed Services Procurement Regulations (ASPR), comprised the first three volumes of Title 32 of the Code of Federal Regulations through 1983. *See* 32 C.F.R. ch. I, pts. 1–39 (1983). In 1983, the General Services Administration, Department of Defense, and NASA established new Federal Acquisition Regulations (FAR) in Title 48 of the Code of Federal Regulations. The FAR system replaced the DAR system as of April 1, 1984. The DAR provisions in Title 32 continue to apply, however, to those contracts which preceded the effective date of the FAR. *See* 50 Fed.Reg. 26,987 (July 1, 1985).

**3.** Although FMC's request to recover the TRIDENT litigation expenses was termed a "claim," a certified claim was in fact submitted for each contract or order from 1979 to 1983 to which FMC was a party—over 90 in all.

II

OPINION

A. *Standard of Review*

The scope of review, which this court has been given over the board's decision by 41 U.S.C. § 609(b) (1982), states that we must affirm the board's decision unless it is "fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." As well stated in *William F. Klingensmith, Inc. v. United States,* 731 F.2d 805 (Fed. Cir.1984):

Under our standard of review, even if there is adequate evidence to support alternative findings of fact, the one chosen by the Board is binding on this court regardless of how we might have decided this issue upon a de novo review.

*Id.* at 809. With regard to a board's conclusions on issues of law, this court has stated:

In contrast to the finality we grant to the [board's] findings of fact, we may engage in open review of its conclusions of law. We note, however, that legal interpretations by tribunals having expertise are helpful to us, even if not compelling.

*Erickson Air Crane Co. of Wash., Inc. v. United States,* 731 F.2d 810, 814 (Fed.Cir. 1984).

B. *Litigation Expenses as Indirect Costs*

The board found, and the parties agree, that the ASPR govern allowable costs for the contracts at issue. Those regulations provide for allocation of a cost (direct or indirect) to a contract as follows:

A cost is allocable to a contract if it—

(i) is incurred specifically for the contract;

(ii) benefits both the contract and other work ... and can be distributed to them in reasonable proportion to the benefits received; or

(iii) is necessary to the overall operation of the business, although a direct relationship to any particular cost objective cannot be shown.

32 C.F.R. § 15–201.4 (1983).

As the board noted, the ASPR and the Cost Accounting Standards (CAS) definitions of direct and indirect costs are identical and state:

Direct Cost—Any cost which is identified specifically with a particular final cost objective. Direct costs are not limited to items which are incorporated in the end product as material or labor. Costs identified specifically with a contract are direct costs of that contract. All costs identified specifically with other final cost objectives of the contractor are direct costs of those cost objectives.

Indirect Cost—Any cost not directly identified with a single final cost objective, but identified with two or more final cost objectives or with at least one intermediate cost objective.

32 C.F.R. §§ 15–109(f), (i) (ASPR); 4 C.F.R. §§ 400.1, 418.30(a)(2), (3) (1988) (CAS).

Interpreting these provisions, the board concluded that:

The TRIDENT claim expenses were incurred to recover amounts believed to be due under the terms of the TRIDENT purchase order, or for breach thereof, and the entire amount of the claim settlement was recorded by FMC/NOD on its books and records as income to that order. Since the TRIDENT claim expenses were thus incurred specifically for, and can be identified specifically with that order, they are direct costs of the order under the ASPR and CAS definition of direct cost, and the ASPR § 15–201.4 provision on allocability.

87–2 B.C.A. (CCH) at 100,137.

FMC argues that the TRIDENT legal costs should be allocable to the subject non–TRIDENT contracts because such costs meet the requirements of ASPR § 15–201.4(iii) of a cost which is "necessary to the overall operation of the [contractor's] business." Although not an explicit requirement of the regulation, that provision has been interpreted to require the contractor to show in addition a "benefit" from the expenditure to government work.

See, e.g., *Lockheed Aircraft Corp. v. United States*, 375 F.2d 786, 793–94, 179 Ct.Cl. 545 (1967). FMC suggests that the TRIDENT litigation expenses were "necessary" to its business and provided a benefit to the government. It argues that the decision to litigate the TRIDENT claim was a general business decision, unrelated to any particular contract. In support thereof, FMC notes the fact that the litigation expenses were incurred after its performance under the TRIDENT contract was completed, that recovery of the settlement amount inured to the overall financial benefit of its NOD division, and that such financial benefit was ultimately passed along by lower prices to the government, effectively its only customer.

In addition, FMC contends that its experience with the TRIDENT claim educated its personnel in the management and administration of government contracts generally. As a consequence of the TRIDENT dispute, FMC asserts that it learned its internal procedures needed improvement and that it implemented "better cost/schedule control and better tracking of contract administration." Such improvement, it argues, made FMC a more competitive contractor, able to give the government the benefit of cost savings. That general benefit to the government is sufficient, per FMC, to satisfy ASPR § 15–201.4(iii).

The board disagreed, holding that the alleged financial benefit to other government contracts from the TRIDENT settlement and the alleged educational benefit were "too remote and insubstantial" to justify pro-rata allocation to other contracts of the TRIDENT legal fees as a G & A expense. 87–2 B.C.A. (CCH) at 100,137. As support for its analysis, the board cited *Dynalectron Corp. v. United States*, 545 F.2d 736, 738, 212 Ct.Cl. 118 (1976). FMC argues that *Dynalectron* is inapposite because the litigation expenses incurred by the contractor in that case were not associated with its government business and, hence, could not be allocated to all government work. Although the specific facts of *Dynalectron* are distinguishable, the legal standard expressed therein, that remote and insubstantial benefits to the govern-

ment do not meet the requirement of a government benefit, remains authoritative. See, e.g., *Lockheed Aircraft*, 375 F.2d at 796 ("allocation may be denied because the necessity and benefit are too remote").

■ Further, FMC has not shown the board's finding, that the alleged benefits *were* remote and insubstantial, to be unsupported by substantial evidence based on the evidence of record as a whole. Accordingly, we reject FMC's argument that the board's conclusion on this point lacks a factual foundation and a legal basis.

That conclusion is sufficient to deny allocation of the TRIDENT litigation expenses to non–TRIDENT contracts. We see no reason to decide what constitutes a direct cost under the TRIDENT purchase order, a matter which the parties hotly dispute. The TRIDENT contract is simply not before us and there is no reason to set forth a general definition of a direct cost in this case. Conceivably, the legal expenses could be wholly unallocable. Nor do we see a need to address the question of whether other requirements of the regulations defining indirect costs were met.

## C. *Equitable estoppel*

■ As the board stated here, the government generally has the right to disallow retroactively or not recognize improperly allocated costs—unless equitably estopped to do so because "such costs have been incurred pursuant to a practice acquiesced in or approved by the Government, and the contractor has reasonably believed that the Government would allow the practice to continue." 87–2 B.C.A. (CCH) at 100,139 (and cases cited therein). FMC asserted that its 1977 and 1978 disclosure statements treated the TRIDENT litigation expenses as G & A expenses, that the government "knew" of the practice through the DCAA's "detailed annual review" of FMC's submissions, and that the government's failure to challenge the allocations in those years made them an approved practice. Upon consideration of all of the circumstances, the board disagreed, finding that there was "no established

practice of Government approval/acquiescence upon which FMC/NOD could reasonably have relied for its allocation of the TRIDENT claim expenses as a G & A expense in the period 1979–1983." *Id.*

With respect to 1977, the board noted that the amount involved was so minor ($7,021) that the government could properly treat it as an indirect cost for practical purposes under ASPR § 15–202(b). FMC argues that the DCAA audit must have disclosed that the amount was for legal expenses related to the TRIDENT contract. That argument does not establish any error in the board's finding and leaves FMC with only 1978 as the foundation for estoppel.

■ With respect to the 1978 submission, the board's finding that the accounting for TRIDENT legal expenses was not approved by the ACO is correct. The ACO and FMC, unable to agree on allocation of TRIDENT legal expenses, ultimately agreed to settle the amount of G & A expenses to be included for 1979 pricing on a "bottom line" basis. FMC does not dispute those facts but, in essence, asserts that the earlier DCAA audit of its 1978 submission preceding these negotiations is the only, or controlling, factor to consider in determining whether a practice has been approved or acquiesced in by the government. We disagree. Estoppel does not lend itself to such a single factor analysis, founded as it is on principles of equity. *Petrofsky v. United States,* 488 F.2d 1394, 1404, 203 Ct.Cl. 347 (1973). It follows that the board properly considered the entire course of conduct of the government and FMC to determine whether there was an established practice with respect to allocation of TRIDENT expenses on which FMC could and did rely to its detriment in making price proposals through 1983. Thus, the board's finding that the government questioned all allocations of TRIDENT expenses at least by October 1980[4] and consistently thereafter was, contrary to FMC's view, a highly relevant factor even if it did

not rise to the level of an unequivocal disapproval.

Similarly, substantial evidence supports the board's finding that the disclosure statement which includes an item "professional services" which are unrelated to the "contract task" was *in itself* too vague to serve as notice that substantial legal expenses incurred for the recovery of fees under a specific contract were being charged. Again, this was one factor which was appropriately considered in determining whether the government had approved a practice.

■ On consideration of the above matters and the entirety of the record, we hold that substantial evidence supports the board's finding that there was no government approval or acquiescence in the allocation of TRIDENT legal expenses as a G & A expense upon which FMC could rely during the period 1979–83.

In so holding we do not mean to imply that, had FMC proved that the government acquiesced in its accounting procedures for two years, that would constitute an "established" practice on which FMC could rely thereafter. Nor do we imply that all other elements of equitable estoppel, particularly detrimental reliance, have been established. We, like the board, simply need go no further in analyzing this issue.

### III

For the foregoing reasons, the decision of the ASBCA rejecting FMC's claim to recoup litigation expenses incurred in connection with the TRIDENT purchase order as an indirect cost under non–TRIDENT contracts is affirmed.

AFFIRMED.

---

**4.** Contrary to FMC's view of the record, substantial evidence supports the finding by the board

with respect to that date.