**BOEING NORTH AMERICAN, INC., Appellant,**

**v.**

**James G. ROCHE, Secretary of the Air Force, Appellee.**

**No. 01–1011.**

United States Court of Appeals, Federal Circuit.

DECIDED: March 15, 2002.

tion of a procedural requirement to the clear-

ly defined NOD.

Terry L. Albertson, Crowell & Moring LLP, of Washington DC, argued for appellant. Of counsel were Scott James Preston and Richard J. Ney, of Chadbourne & Park, of Los Angeles, CA.

Lawrence N. Minch, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for appellee. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; and Deborah A. Bynum, Assistant Director and J. Mark Powell, Attorney.

Clarence T. Kipps, Jr., National Defense Industrial Association, of Washington, DC, for amicus curiae.

Before LOURIE, Circuit Judge, ARCHER, Senior Circuit Judge, and DYK, Circuit Judge.

DYK, Circuit Judge.

Boeing North American, Inc. ("Boeing") appeals from the decision of the Armed Services Board of Contract Appeals ("Board") disallowing legal costs incurred in 1989, 1990, and 1991 for defending a shareholder derivative suit. *Boeing North American, Inc.*, ABSCA No. 49994 00–2 BCA ¶ 30,970 (June 8, 2000). Because the Board applied the wrong legal standard when disallowing the costs and failed to make an assessment of the contractor's likelihood of prevailing in its defense of the shareholder suit, we vacate and remand for further proceedings.

## BACKGROUND

In December 1996 Rockwell International Corp. ("Rockwell") merged with a wholly-owned subsidiary of The Boeing Compa-

ny and changed its name to Boeing North American, Inc. Before the merger, Rockwell was a large defense and aerospace contractor. Among the many contracts Rockwell had with the federal government was Contract No. F04704–90–C–0016 ("contract 16"), awarded by the United States Air Force to Rockwell on March 5, 1990, for inertial measurement units for use in missiles. Contract 16 included both firm fixed-price and cost-reimbursable line items.

The allowability of costs generally, and of selected costs in particular, is covered by subpart 31.2 of the Federal Acquisition Regulations[1] ("FAR"). Contract 16 explicitly incorporated by reference numerous FAR provisions, including FAR § 52.216–7. That provision provided, *inter alia*, for reimbursement of costs "determined to be allowable by the Contracting Officer in accordance with subpart 31.2 of the Federal Acquisition Regulation[s] . . . ." Rockwell sought reimbursement of its legal defense costs incurred in the defense of the shareholder derivative action and of the plaintiffs' legal costs which Rockwell paid. The government urged that the costs were not allowable. The background of the dispute is as follows.

In June 1989 four Rockwell shareholders filed a shareholder derivative complaint in Los Angeles County Superior Court. *Citron v. Beall*, No. C728809 (Cal.Super. Ct., filed June 26, 1989) ("*Citron*"). The suit was brought against fourteen directors of the corporation (some of whom were also officers) and 200 unidentified "John Does" who were "officers, directors and other members of management and employees, who were involved in the wrongdoing complained of." The gravamen of the complaint was that the "defendants knowingly, recklessly, or culpably breached their fiduciary duties to the [c]orporation by . . . failing to establish internal controls sufficient to insure that the [c]orporation's business was carried on in a lawful manner. . . ."[2] On this appeal, the parties agree that the five instances of underlying misconduct alleged in the *Citron* suit were as follows.

First, the government brought a civil suit under the False Claims Act, 31 U.S.C. § 3730, alleging that Rockwell fraudulently mischarged the government for work performed on a Space Shuttle contract in 1975–77. In 1982, Rockwell entered a consent decree to settle the suit, under which it agreed to pay a $500,000 fine and to take corrective action to ensure that Rockwell would not make false claims or conspire to defraud the government in the future. Second, the government brought criminal charges against Rockwell for making false

---

**1.** Federal Acquisition Regulations are codified in title 48 of the Code of Federal Regulations. Because Boeing contests the allowability of costs incurred in 1989, 1990, and 1991, the FAR provisions in effect during those years govern. Unless otherwise indicated, the relevant FAR in effect as of October 1, 1989, did not change in 1990 and 1991, and govern all the costs at issue on this appeal. Also, unless otherwise indicated, all references to the FAR refer to the FAR in effect on that October 1,1989, date.

**2.** The complaint alleged that the named defendants were "controlling persons of Rockwell and had the power and influence, and exercised the same, to cause Rockwell to engage in the illegal practices complained of" and that the unidentified defendants aided, abetted, and participated in the wrongful acts and conduct. However, in their joint statement of facts here, the parties stipulated that the *Citron* "[c]omplaint did not directly allege that the director-defendants participated in, or had prior knowledge of, any of the . . . instances of wrongdoing" described in the complaint.

statements under 18 U.S.C. § 1001 in connection with work performed under a government contract in 1982. Rockwell pled guilty to this charge and was fined $1 million. Third, the government alleged that Rockwell had engaged in defective pricing related to a 1982–83 global positioning system subcontract. A grand jury indicted Rockwell and two Rockwell employees charging them with fraud, mail fraud, and willfully making false statements. Rockwell pled guilty to two counts of the indictment under a plea agreement and was fined $5.5 million. Fourth, a civil *qui tam* lawsuit was filed against Rockwell on behalf of the government under the False Claims Act, charging the company with permitting employees to use government assets for personal gain in 1984. In addition to the *qui tam* suit, the government convened a grand jury but decided not to prosecute Rockwell. The civil suit apparently was also dismissed. Fifth, Rockwell was the subject of a Department of Justice investigation of alleged illegal hazardous waste dumping and other environmental law violations between 1975 and 1989. In March 1992, after settlement of the *Citron* lawsuit, Rockwell pled guilty to four felony violations of the Resource Conservation and Recovery Act, one felony and five misdemeanor violations of the Clean Water Act, and agreed to pay a criminal fine of $18.5 million.

Rockwell responded to the *Citron* complaint by retaining counsel to represent the corporation in the suit and by hiring separate counsel to represent the director defendants named in the complaint, as required by Rockwell's by-laws. Rockwell also formed a special litigation committee ("SLC") (composed of three members of Rockwell's Board of Directors who were not named as defendants in the complaint) to investigate and report on the *Citron* allegations. The SLC also hired separate legal counsel to assist in the investigation and provide independent legal advice. In July 1990 the SLC prepared a report summarizing its conclusion that the *Citron* lawsuit was not reasonably likely to succeed and would be disruptive to Rockwell's ongoing businesses and that prosecution of the suit was not in the best interest of Rockwell or its shareholders. The SLC report recommended that Rockwell's counsel take steps to obtain a dismissal in favor of all defendants.

Defendants moved for summary judgment and submitted the SLC report in support of their motion. The court denied the summary judgment motion on July 16, 1991, because it was "not satisfied that there is 'no triable issue as to any material fact,' as to the good faith, the independence and the quality and character of the investigation of the Special Litigation Committee...." In denying defendant's motion, the court stated "it would appear that, were this a trial, defendants would prevail on the present state of the record (though plaintiffs' counsel will quickly note that the proceeding[s] so far have hamstrung their discovery efforts)."

Subsequently, on October 28, 1991, Rockwell and the *Citron* plaintiffs entered into a settlement agreement. In that agreement, the Rockwell defendants "vigorously den[ied] all liability with respect to any and all of the purported facts or claims alleged in the Complaint...." Pursuant to the agreement, Rockwell agreed to maintain an Audit Committee that would, for at least three years, "meet at least annually with [Rockwell's] Vice President [of] Contracts, Pricing & Subcontracts to review policies and procedures and training programs designed to effect compliance with the laws and regulations applicable to fed-

eral government contracts." Also pursuant to the agreement, Rockwell agreed to pay plaintiffs' attorneys' fees of up to $1.5 million. On October 29, 1991, the court dismissed the *Citron* action with prejudice based on the settlement between the parties. The dismissal order, drafted by the parties and approved by the court, dismissed the complaint on the merits, released the defendants from liability for all claims that were, or might have been asserted in the lawsuit, and awarded plaintiffs $1.4 million in legal fees and costs. The dismissal order additionally required Rockwell to indemnify the defendant directors against any expenses and legal fees incurred in connection with the lawsuit to the "fullest extent permitted" by the applicable Delaware law.[3] Under Delaware law, a corporation has the power to indemnify a director-defendant if the director "acted in good faith and in a manner the [director] reasonably believed to be in or not opposed to the best interests of the corporation." 8 Del. C. § 145(a) & (b) (2000).

In total, between 1989 and 1991, Rockwell incurred approximately $4,576,000 of legal fees and costs associated with the *Citron* action, including costs incurred for representing Rockwell, for representing the director defendants, for legal counsel to the SLC, and for reimbursement of the plaintiffs' legal fees and costs. Rockwell included these costs as general and administrative ("G & A") costs in its home office overhead for fiscal years 1989, 1990, and 1991, and it claimed reimbursement for a portion of the costs under its various contracts with the government. Rockwell allocated 33.2% of these costs to its cost-type and flexibly-priced government work and 66.8% of the costs to its commercial and firm-fixed-price work. Rockwell subsequently submitted a certified claim for $161.91 to the contracting officer based upon the share of the *Citron* costs included in the G & A expenses allocated to contract 16. The parties agreed to treat this as a test case and stipulated that the Board's decision regarding the allowability of these costs to contract 16 would govern the allowability for all relevant contracts.

On May 15, 1996, the contracting officer issued a final decision disallowing the costs Rockwell claimed. ("Final Decision"). The contracting officer concluded that the costs were unreasonable under FAR § 31.201–3,[4] and therefore unallowable, because "Rockwell violated its 'responsibilities to the Government ... and the public at large.'" Final Decision at 1 (quoting FAR § 31.201–3(b)(3)). The contracting officer additionally disallowed the costs, pursuant to FAR § 31.204(c), which provides that allowability of costs not specifically addressed by the FAR is to be based on the principles of the FAR and the "treatment of similar or related ... items [that are specifically addressed under the FAR]." The contracting officer found Rockwell's legal costs to be "similar or related" to the costs incurred in connection with or related to mischarging of costs on government contracts, which are expressly unallowable under FAR § 31.205–15, and

---

**3.** The Dismissal Order provided in pertinent part that "Rockwell shall indemnify the Director Defendants against expenses (including attorneys' fees) actually and reasonably incurred in connection with the Action to the fullest extent permitted by the laws of the State of Delaware."

**4.** FAR 31.201–3 provides standards under which the reasonableness of a cost is determined. Reasonableness is one factor in determining the allowability of a cost under FAR 31.201–2.

"similar or related" to costs for the unsuccessful defense of fraud charges, which are expressly unallowable under FAR § 31.205–47. Final Decision at 3.

Rockwell appealed the contracting officer's final decision to the Armed Services Board of Contract Appeals. The parties elected to submit the appeal on the record without a hearing. In its appeal to the Board, Boeing, as Rockwell's successor-in-interest, argued that Rockwell's costs were allowable because (i) the costs were ordinary, necessary, and allowable "professional services" costs under FAR § 31.205–33(b); (ii) the costs were reasonable in relation to the services rendered, pursuant to FAR §§ 31.201–3 and 31.205–33(b); (iii) the costs were allocable to the contract because they conferred benefit to the contract, in accordance with FAR § 31.201–4; and (iv) the costs were not limited or disallowed by any FAR cost principles. *Boeing North American, Inc.*, slip op. at 10.

While the appeal was pending, this court decided *Caldera v. Northrop Worldwide Aircraft Services, Inc.*, 192 F.3d 962 (Fed. Cir.1999), and the Board required supplemental briefing concerning the impact of that case. In *Northrop*, we addressed the question whether certain legal costs were "allowable costs," 192 F.3d at 972, when the costs related the defense of an action charging that the contractor wrongfully terminated several employees because the employees refused to participate in fraud against the United States. In that action, a state court had found that the employees had been wrongfully terminated because they refused to commit fraud against the government. The majority of our opinion was directed to the questions of whether the state court had determined that Northrop committed fraud and, if so, whether that determination should be given collat-

eral estoppel effect in Northrop's suit to recover its legal defense costs. In a brief portion of our opinion, we concluded that recovery of the contractor's legal costs were not allowable because they were not allocable. They were not allocable under FAR § 31.201–4(b). That regulation provides that "[a] cost is allocable if it is assignable or chargeable to one or more cost objectives on the basis of relative benefits received or other equitable relationship. Subject to the foregoing, a cost is allocable to a Government contract if it ... [b]enefits both the contract and other work, and can be distributed to them in reasonable proportion to the benefits received." FAR § 31.201–4(b). We found that the contractor's recovery of the legal costs was barred "because the government did not benefit from [the contractor's] defense of the [state court] lawsuit...." *Northrop,* 192 F.3d at 972–73.

The Board denied Boeing's appeal in this case based on *Northrop* because there could be "no benefit to the Government in a contractor's defense of a third party lawsuit in which the contractor's prior violations of federal laws and regulations were an integral element of the third party['s] allegations." *Boeing North American,* slip op. at 13. The Board reasoned that "but for" Rockwell's wrongdoing the *Citron* suit would not have been brought, and the costs would not have been incurred.

This timely appeal followed.

## DISCUSSION

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(10). Board findings of fact will be set aside if "arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith,

or if ... not supported by substantial evidence." 41 U.S.C. § 609(b). Legal determinations of the Board are reviewed without deference. *Id.*

## I.

At the outset it is necessary to distinguish, as we have in other contexts,[5] between the concepts of cost allocability and cost allowability under the FAR. The issue here is one of allowability.

Allocability is an accounting concept involving the relationship between incurred costs and the activities or cost objectives (*e.g.,* contracts) to which those costs are charged. Proper allocation of costs by a contractor is important because it may be necessary for the contractor to allocate costs among several government contracts or between government and non-government activities. Cost allocability is to be determined according to the principles of FAR § 31.201–4, or under the Cost Accounting Standards ("CAS"), 4 C.F.R. Parts 403, 410, if the contract is covered by the CAS.

The concept of cost allowability concerns whether a particular cost can be recovered from the government in whole or in part. Allowability of a cost is governed by the FAR regulations, *i.e.* the cost principles expressed in Part 31 of the FAR and pertinent agency supplements.

■ Although a cost may be allocable to a contract, the cost is not necessarily allowable. We have agreed with the general proposition that "costs may be assignable and allocable under CAS, but not allowable under [FAR]." *United States v. Boeing Co.,* 802 F.2d 1390, 1394 (Fed.Cir.1986).[6] And the FAR makes clear that "[w]hile the total cost of a contract includes all costs properly allocable to the contract, the allowable costs to the Government are limited to those allocable costs which are allowable pursuant to [FAR] part 31 and applicable agency supplements." FAR § 31.201–1(b) (2001).

To be sure, the FAR sometimes seems to blur the distinction between allowability and allocability and to suggest that allowability depends upon allocability. For example, when determining cost allowability under FAR subpart 31.2, the allocability of the cost is a factor to consider, along with reasonableness of the cost, relevant standards promulgated by the Cost Accounting Standards ("CAS") Board, terms in the contract at issue, and any limitations set forth in FAR subpart 31.2. FAR § 31.201–2(a).[7] But this provision merely codifies the general principle that a cost is not allowable if the cost cannot be allocat-

---

5. *See, e.g., Rice v. Martin Marietta Corp.,* 13 F.3d 1563, 1565–67 (Fed.Cir.1993).

6. *Boeing* construed the Defense Acquisition Regulations ("DAR"), which comprised the first three volumes of Title 32 of the Code of Federal Regulations through 1983. The FAR replaced the DAR effective April 1, 1984. The DAR, in turn, had replaced the Armed Services Procurement Regulations ("ASPR"), which had comprised the first three volumes of Title 31 of the Code of Federal regulations. *See FMC Corp. v. United States,* 853 F.2d 882, 884 n. 2 (Fed.Cir.1988).

7. FAR 31.201–2(a) provides that "[t]he factors to be considered in determining whether a costs is allowable include the following: (1) Reasonableness. (2) Allocability. (3) Standards promulgated by the CAS Board, if applicable; otherwise, generally accepted accounting principles and practices appropriate to the particular circumstances. (4) Terms of the contract. (5) Any limitations set forth in this subpart."

ed to a government contract. For example, a contractor's cost of certain materials (*e.g.,* nuts and bolts) may be allowable when the materials are used to perform a government contract (and the costs therefore can be allocated to the contract), but not when the materials are used to perform a contract with a private party. Thus, cost allowability may turn on whether the cost is allocable. On the other hand, even when a cost is allocable, it is not necessarily allowable. For example, a contractor's cost of materials (*e.g.,* nuts and bolts) used to perform a government contract may be allocable to the contract, but the cost may be unallowable if it is unreasonable (*e.g.,* if the contractor overcharges the government for the materials). *See* FAR §§ 31.201–2, 31.201–3.

█ In summary, the concept of allocability is addressed to the question of whether a sufficient "nexus" exists between the cost and a government contract. *Lockheed Aircraft Corp. v. United States,* 179 Ct.Cl. 545, 375 F.2d 786, 794 (1967). The concept of allowability is addressed to the question whether a particular item of cost should be recoverable as a matter of public "policy." *Rice,* 13 F.3d at 1569.

## II.

Boeing argues that the decision below, and our decision in *Northrop,* confused the concepts of allocability and allowability, and that, when these concepts are properly distinguished, Rockwell's legal defense costs must be allowable. Boeing urges that under the FAR no benefit to the government need be shown for a cost to be allowable, even if a benefit to a particular contract may be necessary for a cost to be allocable to the contract under FAR

§ 31.201–4(b). When properly viewed under allowability principles, Boeing argues, Rockwell's costs are allowable under FAR § 31.205–33, because that regulation generally provides that costs for professional services are allowable, with certain specific exceptions contained in subsection (c).[8] According to Boeing, none of the exceptions of FAR § 31.205–33(c)(1991) is relevant here, so the costs must be allowable.

This panel is, of course, bound by our decision in *Northrop, see Vas–Cath, Inc. v. Mahurkar,* 935 F.2d 1555, 1563 (Fed.Cir. 1991), and we reaffirm here our holding in *Northrop* that a contractor's legal costs are unallowable when incurred in the unsuccessful defense of a lawsuit that involved a judicial determination that the contractor sought to induce its employees to commit fraud against the government by the contractor. Some of the language of our decision in *Northrop,* however, has caused confusion about why the costs in question were not allowable. In that case, the government urged that "where the costs arise from the defense of wrongful conduct involving ... fraud upon the Government, there is no reasonable benefit to the Government, and the legal costs are not allocable to the contract," and because there was no benefit to the Government the costs were "not allowable costs of the contract." *Northrop* did not address the difference between allocability and allowability, and simply argued that the state court's judgment was not collateral estoppel, and that it was reasonable for *Northrop* to defend the suit based on the available evidence. Adopting the government's approach, we eventually concluded that the legal defense costs were unallowable "because the government did not benefit from [the contractor's] defense of the

---

**8.** Subsection (c) was first adopted on December 21, 1990.

[state court] lawsuit . . . ." *Northrop,* 192 F.3d at 972–73. We reasoned that:

> The Army argues that the cost is allocable only if there is some benefit to the government for incurring the cost. It is established that the contractor must show a benefit to government work from an expenditure of a cost that it claims is "necessary to the overall operation of the [contractor's] business." *See FMC v. United States,* 853 F.2d 882, 885 (Fed. Cir.1988); *Lockheed Aircraft Corp. v. United States,* 179 Ct.Cl. 545, 375 F.2d 786, 793–94 (1967). The Board erred in failing to make a determination of whether or not [Northrop]'s defense of the Oklahoma lawsuit benefited the government. We can discern no benefit to the government in a contractor's defense of a wrongful termination lawsuit in which the contractor is found to have retaliated against the employees for the employees' refusal to defraud the government.

*Id.* at 972. The government (again) urges us to adopt such an approach. However, we conclude that the government's approach is not, in fact, consistent with the regulations.

Under FAR § 31.201–4,

> A cost is allocable if it is assignable or chargeable to one or more cost objectives *on the basis of relative benefits received* or other equitable relationship. Subject to the foregoing, a cost is allocable *to a Government contract* if it—(a) Is incurred specifically for the contract; (b) Benefits both the contract and other work, and can be distributed to them in reasonable proportion to the benefits received; or (c) Is necessary to the overall operation of the business, although a direct relationship to any particular cost objective cannot be shown.

FAR § 31.201–4 (emphases added). The word "benefit" is used in this allocability provision to describe the nexus required for accounting purposes between the cost and the contract to which it is allocated. FAR § 31.201–4(b) only requires that the cost benefit the contract to which it is allocated for the cost to be allocable. The requirement of a "benefit" to a government contract is not designed to permit contracting officers, the Board, or this court to embark on an amorphous inquiry into whether a particular cost sufficiently "benefits" the government so that the cost should be allowable. The question of allowability is to be undertaken by applying the specific allowability regulations, which embody the government's view, as a matter of "policy," as to whether the contractor may permissibly charge particular costs to the government (if they are otherwise allocable).

Our earlier decisions in *Lockheed,* 375 F.2d at 794, and *FMC Corp. v. United States,* 853 F.2d 882, 885 (Fed.Cir.1988), relied on by the government in *Northrop* as the sole authority for the "benefit to the government" theory, do not supply any support for an interpretation of FAR § 31.201–4 that would base the allowability of a cost on the cost's "benefit to the government." Neither *Lockheed* nor *FMC* discussed the allowability of the costs at issue, but focused instead on allocability. In *Lockheed,* the contractor sought to allocate a portion of its personal property taxes that were assessed with respect to commercial productive material used for government contracts. Our predecessor court held that the costs were allocable to the contracts because payment of the taxes was necessary to the overall operation of the contractor's business. *Lockheed,* 375 F.2d at 796–97. Our predecessor court described the nexus required to show allocability, stating:

The criterion in the ASPR [now the FAR] for allocating indirect costs is "benefit." This is explicit in paragraph [b] of section [FAR § 31–201.4], and implicit in paragraph [c]. It is a kind of common sense approach to allocation. No one would quarrel with the general proposition that it is fair to allocate to government contracts the costs of services which facilitate performance of the particular contracts or are essential to the existence and continuance of the business entity. But the burden will be on the contractor to show the benefit and a reasonable allocation among different government contracts and between government and commercial work generally.

*Id.* at 793–94. In *FMC*, the contractor had sued another government contractor, alleging breach of a contract to provide parts for a system for use in the government's TRIDENT submarines. The parties settled the dispute after their work on the TRIDENT submarines was completed. FMC sought to allocate its legal costs incurred in connection with the dispute to other government contracts, as part of G & A costs, unrelated to its TRIDENT submarine contract because the TRIDENT contract had already been completed. We affirmed the Board's holding that "the alleged financial benefit to other government contracts from the TRIDENT settlement .... [was] 'too remote and insubstantial' to justify pro-rata allocation to other contracts of the TRIDENT legal fees as a G & A expense." *FMC*, 853 F.2d at 886.

■ Thus, we agree with Boeing that the word "benefit," as used in FAR

§ 31.201–4, refers to an accounting concept and does not impose a separate requirement that a cost benefit the government's interests for the cost to be allowable.[9] Boeing is mistaken, however, that Rockwell's costs are necessarily allowable under the allowability regulations.

### III.

Boeing's conclusion rests on a fundamentally flawed assumption—that the only professional service costs that are not allowable under FAR § 31.205–33 are those costs that are specifically disallowed under another FAR provision.

Subpart 31.2 of the FAR pertains to cost principles and procedures governing "Contracts with Commercial Organizations." FAR § 31.201 outlines the general principles of the subpart. FAR § 31.201–2 explains that:

> [t]he factors to consider in determining whether a cost is allowable include the following: (1) reasonableness; (2) allocability; (3) standards promulgated by the CAS Board, if applicable; otherwise generally accepted accounting principles and practices appropriate to the particular circumstances; (4) terms of the contract; (5)[and] any limitations set forth in this subpart.

FAR § 31.204(c) explains how to apply the principles and procedures, and FAR § 31.205 contains over fifty subsections, each of which covers, in detail, the allowability of particular selected costs.

Although the FAR § 31.205 subsections covering selected costs are extensive, FAR

---

9. In light of our disposition in this case, which does not depend on allocability principles, we need not address Boeing's argument that the CAS, rather than the FAR, governs the allocability of the costs at issue here and that CAS requires allocation of the costs at issue to the contracts in question. Nor need we decide whether the "benefit" requirement of FAR 31.201–4 applies equally to direct costs, indirect costs, and G & A costs.

§ 31.204 makes clear that "[s]ection 31.205 does not cover every element of cost. Failure to include any item of cost does not imply that it is either allowable or unallowable." In such situations, FAR § 31.204(c) instructs us: *"The determination of allowability shall be based on the principles and standards in this subpart and the treatment of similar or related selected items."* FAR § 31.204(c) (emphasis added). Although neither Boeing, its amicus, nor the government cites FAR § 31.204(c) in their briefs, the contracting officer relied on that provision here in disallowing the costs.

This court has not previously interpreted FAR § 31.204(c), but the Board has applied this regulation, or its predecessor in the Defense Acquisition Regulations ("DAR")[10] or the Armed Services Procurement Regulations ("ASPR"),[11] on several occasions in the past. In *Stanford Univiversity*, ABSCA No. 28240 85–3 BCA ¶ 18,-446, 1985 WL 17055 (Sept. 24, 1985), Stanford sought to recover costs, including the cost of legal counsel, related to the issuance of a state tax-exempt bond, proceeds of which were used to finance the expansion of Stanford's computer facilities. The parties did not dispute the benefit of the expanded computer facilities to the government contract, but contested the allowability of the costs related to the bond issuance. The Board concluded that bond issuance costs were not specifically mentioned in the allowability regulations. The Board, however, noted that under the regulations in effect at the time, "[F]ailure to mention a particular item of cost in the standards is not intended to imply that it is either allowable or unallowable; rather, determination as to allowability in each

case should be based on the treatment or standards provided for similar or related items of cost." *Id.*, slip op. at 2–3. The Board held that the costs were unallowable because they were similar or related to "costs incurred for interest on borrowed capital," which was a cost specifically disallowed under the regulations, because "both bond issuance costs and interest are incurred to secure borrowed capital." *Id.* at 3–4. Other decisions of the Board have also applied FAR § 31.204(c) or one of its predecessors and found that costs were allowable because the costs were similar to costs allowed under other provisions. *See Gen. Dynamics Corp.*, ABSCA No. 31359 92–1 BCA ¶ 24,698, 1992 WL 4538 (Jan. 6, 1992) (although the regulations did not explicitly cover allowability of costs associated with launching and rollout flights of a new aircraft, analyzing the allowability of those costs by considering whether they were similar to costs of advertising and sales promotion covered under DAR 15–205.1 or similar to costs of entertainment or lobbying covered under DAR 15–205.11(d)); *Grumman Aerospace Corp.*, ABSCA No. 34665 90–1 BCA ¶ 22,417, 1989 WL 222679 (Oct. 24, 1989) (holding that dividends paid to a contractor's employees on restricted stock were allowable, even though not explicitly covered by the regulations, because those costs were more similar or related to allowable cash compensation or stock bonuses than to unallowable distributions of profit), vacated on other grounds, 927 F.2d 575 (Fed.Cir. 1991); *Boeing Co.*, ABSCA No. 24089 81–1 BCA ¶ 14,864, 1980 WL 2773 (Dec. 15, 1980) (holding the cost of stock appreciation rights ("SAR") were allowable because SARs were more similar or related to al-

---

**10.** DAR § 15–204(c) (1984).

**11.** ASPR § 15–204(c) (1976).

lowable cash or stock bonus options, than to unallowable stock options).

Our decision in *Northrop* must be understood as resting on the principle announced in FAR § 31.204(c). As discussed above, in *Northrop*, we addressed the question, whether legal defense costs (in an action charging that the contractor wrongfully terminated several employees because the employees refused to participate in fraud against the United States) were allowable costs. Despite the existence of detailed regulations providing that professional service costs were allowable and that certain categories of legal expenses were not allowable, the regulations did not explicitly govern the allowability of the costs in *Northrop*. In *Northrop*, the FAR, however, dealt with closely comparable categories of selected costs. Statutes and the FAR regulations broadly disallowed legal defense costs in suits brought by the federal and state governments "involv[ing] an allegation of fraud or similar misconduct" by the contractor. *See* FAR §§ 31.205–47(b)(2) and (b)(4).[12] The regulations also disallowed costs of unsuccessfully defending suits brought under certain federal anti-fraud laws by a private party. For example, FAR § 31.205–47(f)(4) disallowed legal costs for the "[d]efense of suits brought by employees or ex-employees of the contractor under section 2 the Major

Fraud Act of 1988 where the contractor was found liable...." And FAR § 31.205–47(c)(2)(1997) disallowed costs incurred when defending "any proceeding brought by a third party under the False Claims Act" in which the United States did not intervene, if the contractor was found liable.

Properly understood, *Northrop* and FAR § 31.205–47 establish a simple principle—that the costs of unsuccessfully defending a private suit charging contractor wrongdoing are not allowable if the "similar" costs would be disallowed under the regulations. The present case is, however, distinguishable from *Northrop*. Here the costs of defending the *Citron* lawsuit would not be, as in *Northrop*, "similar" to disallowed costs. The regulations disallowing particular items of cost do not address costs similar to the costs of defending a contractor's directors from charges that they tolerated inadequate controls concerning possible fraud or similar misconduct. However, we must also consider whether those costs are "related" to a category of disallowed costs, that is, costs of defending against government charges of contractor wrongdoing.[13]

We think it unlikely that the "related" test under FAR § 31.204(c) was designed

---

12. *Northrop* involved the 1992 version of the FAR. The citations in this paragraph are to this version of the FAR, except where indicated.

13. The costs of defending against the majority of the five charges of wrongdoing alleged in the *Citron* complaint here would be disallowed if Rockwell had sought to recover those costs from the government. As to the "second" and "third" items (*see ante* at 1322–23.), 10 U.S.C. § 2324(e)(1)(C) disallows legal costs incurred in defense of a civil or criminal fraud charge brought by the United States where the contractor is found liable or pleads *nolo contendere* to the fraud charge. As to the "first", "second", "third", and "fifth" items above, FAR 31.205–47(b) disallows legal costs

related to any proceeding brought by a Federal, State, local, or foreign government for violation of a law or regulation by the contractor, if the result of such a proceeding is: in a criminal proceeding, a conviction; in a civil or administrative proceeding, a finding of contractor liability or the imposition of a monetary penalty; or if the proceeding was settled but could have led to one of those outcomes. The costs that are disallowed under FAR 31.205–47 specifically include the "costs of legal services, whether performed by in-house or private counsel; ... and any similar costs incurred ... which bear[ ] a direct relationship to the proceedings." 31.205–47(a). Thus, statutes and regulations make clear that a contractor's legal costs incurred in the unsuccessful defense of four of the suits

to make a particular cost item unallowable simply because it would not have been incurred but for the occurrence of an event that resulted in a disallowed cost.[14] Under that theory, a contractor could not recover the cost of defending against lawsuits frivolously charging a lack of adequate controls over employee misconduct related to government contracts. The costs of defending corporate directors against frivolous lawsuits are essential to any business operation. In order for a cost to be "related," there must be a more direct relationship to the disallowed cost. Our predecessor court considered a similar issue in *Grumman Aerospace Corp. v. United States*, 217 Ct.Cl. 285, 579 F.2d 586, 596 (1978). Although that case did not directly construe the "similar or related" provision, that provision was codified at that time at ASPR § 15.201–4(c)(1976). ASPR § 15–205.31(d) disallowed legal costs relating to "prosecution of claims against the Government." The government urged that that ASPR provision prohibited Grumman from recovering legal costs incurred in bringing a Freedom of Information Act ("FOIA") claim to gain access to information used by the Board in determining that Grumman had received excessive profits from the government in 1965 and 1966. The Government's theory was that these costs related to the "prosecution of claims against the government." We rejected that theory. We held that ASPR 15–205.31(d) did not prohibit the recovery of costs associated with such a FOIA suit because those costs bore "too tangential and speculative a relation to a contractor's demand in the ... proceeding [to renegotiate the 1965 and 1966 profits]...." *Grumman,* 579

F.2d at 597. However, we suggested that there may be "other types of injunctive suit[s that] are sufficiently related to a demand by [a] contractor for money so as to constitute a claim within the meaning of ASPR 15–205.31(d)...." *Id.* at 596. The required direct relationship, we think, would exist here if there were a judicial determination that the Rockwell directors had failed to maintain adequate controls to prevent the occurrence of the wrongdoing against the government. But no such judicial determination has in fact been made. Rather the *Citron* suit was settled. We turn once again to the regulations for guidance as to the treatment of settlements.

The regulations reflect a policy judgment that where the action is brought by a federal or state government entity and the defense costs would be disallowed in an unsuccessful suit, the defense costs should also be disallowed in a settlement situation, *see* FAR § 31.205–47(b)(4), unless the U.S. government specifically agrees that they will be allowable, *see* FAR § 31.205–47(c). This policy judgment appears to be based on the assumption that suits brought by government entities are in most situations likely to be meritorious, thus justifying a bright line rule that does not look behind the settlement. Where a suit is brought by a private party and the suit is settled, however, such a blanket assumption is not appropriate. Unfortunately, the parties have not provided much help to us on how to distinguish between meritorious suits (for which costs should not be allowable) and suits that lacked merit (for which costs should be allowable), each taking an extreme position. Boeing

brought by the government here against Rockwell were not allowable.

**14.** Boeing concedes in its reply brief that "it is likely that Rockwell would not have been

confronted with the Citron lawsuit had the federal investigations not occurred...." Appellant's Reply Brief at 27.

contends that only those costs incurred in a frivolous defense should be disallowed. The government on the other hand urges that we should apply a "but for" test, disallowing any costs that would not have been incurred "but for" misconduct by contractor employees. We find both positions unsatisfactory.

The regulations suggest that where a private suit is involved an inquiry is necessary to determine whether the plaintiff was likely to prevail.[15] This approach is most clearly reflected in the FAR regulations' treatment of settlements of private suits brought under the False Claims Act where the government does not intervene. FAR § 31.205–47(c)(2) (2000). Such costs may be allowable if the contracting officer determines that there was "very little likelihood that the third party [plaintiffs] would have been successful on the merits." *Id.*[16]

■ We think that this is an appropriate standard for private suits in the present context. For the costs to be allowable

in a settlement situation (where the costs of an unsuccessful defense would be disallowed), Boeing must show that the allegations in the *Citron* action had "very little likelihood of success on the merits."

■ Boeing argues that in settlements the costs must be allowed because the Cost Principles Committee addressed and rejected a proposal to disallow such costs. Boeing points out that in 1988 the Cost Principles Committee proposed a provision (to be codified at FAR § 31.205–47(f)(5)) that would have disallowed costs incurred in connection with the "defense of lawsuits with third parties alleging improper activities related to Government contracting where the contractor was found liable or settled." Memorandum from Chairman, Cost Principles Committee, to the Director DAR Council (Nov. 29, 1988). This provision was never adopted. Boeing urges that because this provision would have specifically disallowed the costs here but was never enacted, such a limitation cannot be placed on the allowability of the costs under FAR § 31.205–33. This analy-

---

**15.** We note that no such inquiry is required under FAR 31.205–47(f)(4). That provision disallows a contractor's costs for the "[d]efense of suits brought by employees or ex-employees of the contractor under section 2 of the Major Fraud Act of 1988 where the contractor was found liable or settled" without a determination as to the likelihood of the success of the employee's claim. The Major Fraud Act only provides a cause of action for private parties who have acted "in furtherance of" a prosecution under the Act and are seeking a remedy for retaliation they have suffered because of their participation. Thus, a private party's cause of action under the Major Fraud Act is predicated on participation in a criminal prosecution that was initiated by the government against the contractor. No such direct nexus with a criminal prosecution is shown here.

**16.** FAR 31.205–47(c)(2) did not exist in 1989, but was designed *"to clarify* the proper inter-

pretation of cost principle FAR 31.205–47 as it relates to qui tam suits not joined in by the Government." 61 Fed. Reg. 31790 (June 20, 1996) (emphasis added). A suggestion that the new rule should not be applied retroactively, *see* Letter from Marcia G. Madsen, Chair Section of Public Contract Law, American Bar Association, to Mr. Jeremy Olson, General Services Administration and Ms. Sandra G. Haberlin, Defense Acquistion Regulations Council (Sept. 22, 1997), *available at* http:// www.abanet.org/contract/federal/regscomm/ quitam—001.html, was rejected by the DAR Council, *see* 63 Fed. Reg. 58,608 (Oct. 30, 1998). Thus, it is clear that FAR 31.205–47(c)(2) applies retroactively and merely clarifies how the FAR principles, as they existed prior to 1998, applied to the allowability of costs related to the defense of *qui tam* suits brought under the False Claims Act.

sis is not correct. The Supreme Court has stated that "[a]s a general matter, we are reluctant to draw inferences from Congress' failure to act." *Brecht v. Abrahamson*, 507 U.S. 619, 632, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *see also Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 306, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988); *Am. Trucking Assns v. Atchison, Topeka Santa Fe Ry. Co.*, 387 U.S. 397, 416–18, 87 S.Ct. 1608, 18 L.Ed.2d 847 (1967); *see also United States v. Holmes*, 954 F.2d 270, 273 (5th Cir.1992) ("Unenacted legislation has no interpretive value."). The same holds for an agency's failure to enact a regulation. *See Fireside Nissan Inc. v. Fanning*, 30 F.3d 206, 212 (1st Cir.1994) (holding that an agency's intent cannot be determined from the agency's failure to adopt a regulation). Indeed, our decision in *Northrop* implicitly rejected Boeing's argument when it held Northrop's legal defense costs unallowable, even though those costs would have been covered by that portion of the unadopted regulation that would have disallowed legal defense costs where the contractor was found liable.

 Boeing further argues that the terms of the *Citron* settlement agreement conclusively establish that the *Citron* plaintiffs had very little likelihood of success on the merits. Boeing urges, without citing any authority, that "indemnification of the director defendants under Delaware law was permissible only where the directors were found to have acted in good faith and in the corporation's best interests," Appellant's Brief at 22–23, and that the California court, by approving the settlement requiring indemnification of the defendants, "necessarily concluded that the allegations were without merit when it ordered Rockwell to indemnify its directors." Appellant's Brief at 26. In fact, in ordering indemnification to the "fullest extent permitted by the laws of the State of Delaware" there was no determination by the California court as to the allowability of fees under Delaware law. The pertinent Delaware law gives corporations the *"power* to indemnify" a director-defendant if the director acted in good faith, 8 Del. C. 145(a)(b) (emphasis added), and Rockwells by-laws required that Rockwell exercise this power. But there has been no judicial determination of good faith here, and Rockwells determination of good faith and subsequent indemnification is irrelevant. Thus, we cannot agree that the district court's approval of the settlement terms indicate that the *Citron* plaintiffs would have had very little likelihood of success on the merits because the defendants acted in good faith.[17]

## CONCLUSION

The Board committed legal error in determining the allowability of Rockwell's legal defense costs based on whether the costs conferred a "benefit [on] the Government" and based on a "but for" standard that looked solely to the fact that admitted misconduct by Rockwell formed the basis for the complaint. We vacate the Board's decision and remand to the Board for further proceedings consistent with this opinion. On remand, the Board may allow the costs only if it determines that the plaintiffs in the *Citron* lawsuit had "very little likelihood of success on the merits" of prevailing.

*VACATED AND REMANDED.*

---

**17.** Even if there had been such a determination by the state court, we doubt that, as a matter of collateral estoppel, it would be binding against the government.

COSTS

No costs.